IN RE MILWAUKEE SOUTHERN RAILWAY COMPANY.

*October 24, 1904—April 5, 1905.*

*Railroads: Condemnation of lands: Due incorporation, how proven: Termini and length of road: Survey: Intention to construct: Dismissal of proceedings as to part of lands: Crossing streets, etc.: Taking park land.*

1. The fact that a railroad company is duly incorporated, required by sec. 1846, Stats. 1898, to be stated in a petition for condemnation of lands, is conclusively shown, under sec. 4181, by production of its patent of incorporation issued by the state.
2. The requirement of sec. 1820, Stats. 1898, that the articles of organization of a railroad corporation shall state "the places from and to which such railroad is to be constructed or maintained and operated," does not refer necessarily to places within the state, but is complied with by the designation of termini without the state.
3. The requirement of said sec. 1820 that the length of the proposed railroad be stated, refers to the length of the road between the termini, and is not limited to the portion within the state.
4. The requirement of sec. 1846, Stats. 1898, that it shall appear that the petitioner "has surveyed its route over the land sought to

be acquired for its main line and has actually staked out the center line of its proposed road over the grounds desired for such main line," refers only to that part of the main line covering the land sought to be acquired in the specific proceeding.

5. The fact that condemnation proceedings must be dismissed as to some of the lands described because of insufficiency of notice to the owners does not deprive the court of jurisdiction to proceed as to the lands whose owners were given proper notice, although such lands do not constitute a continuous part of the line of the proposed road.

6. The fact that a railroad corporation intends in good faith to construct the road authorized by its charter is conclusively shown, in proceedings for the condemnation of land, by the production of its patent of incorporation issued by the state. DODGE and WINSLOW, JJ., dissent.

7. The power given by subd. 5, sec. 1828, Stats. 1898, to a railroad corporation to construct its tracks across, along, or upon streets or highways is in no way superseded or taken away by the power given to a city "to regulate and prohibit the use of locomotive engines within the city and to control the location of railroad tracks."

8. Under our statutes a railroad corporation has no right to condemn and take for its uses any part of a public park if without such taking it can efficiently and beneficially exercise the power of locating and building its road between the termini thereof.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is an appeal from an order appointing commissioners in a proceeding to acquire real estate for railway purposes. The application states that the petitioner is a duly incorporated railroad corporation under the laws of this state; that it was organized to construct, maintain, and operate a railroad for public use from a point in the city of Milwaukee, Wisconsin, thence in a southerly and southwesterly direction to a point on the boundary between the states of Wisconsin and Illinois, thence in a like direction as above stated to East St. Louis, in the state of Illinois; that it is intended in good faith to construct the railroad authorized by the charter and articles of incorporation; that of the lands designated it re-

quires the parts described for a public use, stating the names of the owners and occupants of such lands. The petition prays an order prescribing the notice to be given and the time and place of hearing; that the court determine whether petitioner is entitled to take the lands sought to be acquired for such public use; and that commissioners be appointed to ascertain and appraise the compensation to be made.

The appellants, the city of *Milwaukee,* the *International Harvester Company, Theron Higby,* and *Michael J. Canar,* all appeared separately, and answered, denying all the material allegations of the petition, and alleging that part of the land of petitioner's proposed route sought to be condemned is one of the public parks of the city of *Milwaukee,* and that the petitioner had not obtained the consent of the city of *Milwaukee* to cross any of the city streets with the proposed railroad. It appears that petitioner had made application to the common council of the city of *Milwaukee* for such consent, but that the application had not received final action at the time these proceedings were instituted.

Upon the hearing it appeared that the required notice of hearing had not been given to some of the owners of the lots covered by the application, and the proceedings were discontinued as to such pieces of land, without prejudice to the right of petitioner to institute other proceedings to condemn these pieces of land for the purpose of building this railroad.

The court found: (1) That petitioner is a railroad corporation, duly incorporated and existing under the laws of the state. (2) That the real estate covered by the proceedings is necessary to construct and operate this railroad. (3) That petitioner intends in good faith to construct and operate the railroad authorized by petitioner's articles of incorporation and patent issued over and upon the lands covered by this proceeding. (4) That the strip of Mitchell Park adjoining the track of the Chicago, Milwaukee & St. Paul Railway Company is unimproved land, poorly adapted for park purposes, and is

necessary to enable petitioner to construct its railroad as located, and that the taking of such strip for this purpose will not materially or substantially damage the park as a whole, or impair its usefulness. (5) That petitioner has surveyed its route over the lands in question for its main line, and has actually staked out the center line of the proposed railroad over this land; that the land specified to be taken for depot purposes, station buildings, grounds, and yards is required and necessary, and that petitioner intends in good faith to use them for such purposes; that the route of this railroad has been located by petitioner's board of directors upon the line staked out over the land covered by the proceedings, and that this real estate is required for the purposes of constructing and operating petitioner's proposed railroad. (6) That petitioner intends in good faith to institute independent condemnation proceedings to acquire the real estate originally intended to be included in the proceedings, but as to which the proceedings were dismissed without prejudice. (7) And that petitioner has complied with the requirements of the statutes, and has done all things necessary to entitle it to take the real estate covered by the proceedings and sought to be acquired for the purposes stated.

Upon such findings the court made an order declaring petitioner a duly incorporated railroad under the laws of this state, and that the real estate in question is necessarily required by it to construct, maintain, and operate the proposed railroad; and appointing commissioners to ascertain and appraise the compensation to be paid to the owners of the real estate so to be taken, fixing the time and place of their first meeting, and prescribing what notice should be given by them to the real-estate owners. This is an appeal from such order.

For the appellant the city of *Milwaukee* the cause was submitted on the brief of *Carl Runge,* city attorney.

For the appellants *Higby* and *Canar* there were briefs by *Timlin & Glicksman,* and oral argument by *W. H. Timlin.*

For the appellant the *International Harvester Company* there was a brief by *Miller, Noyes & Miller,* and oral argument by *Geo. H. Noyes.*

For the respondent there was a brief by *J. C. Kerwin* and *John F. Burke,* attorneys, and *Henry C. Wood* and *Colin C. H. Fyffe,* of counsel, and oral argument by *Mr. Kerwin.* They contended, *inter alia,* that the petitioner has a right to condemn a right of way through Mitchell Park or along one side of it, the taking of which would not in any way interfere with the uses of the whole property for park purposes. The state, through the legislature, may from time to time, as necessity demands, exercise such right of eminent domain over any property within its borders, even though such property had been formerly dedicated to public use. 1 Lewis, Eminent Domain (2d ed.) §§ 3, 244–246; sec. 3, art. IX, Const.; *N. Y., H. & N. R. Co. v. B., H. & E. R. Co.* 36 Conn. 196, 198; *Smith v. Gould,* 59 Wis. 631, 643. Where, as here, a railroad company is given power by its charter to locate its terminus and does so locate it at a point which makes it necessary to cross property formerly dedicated to public use, the right to condemn such property is an essential element of the grant. *Providence & W. R. Co. v. Norwich & W. R. Co.* 138 Mass. 277; *Mobile & G. R. Co. v. Alabama M. R. Co.* 87 Ala. 501. The implied right to take property formerly dedicated to public use arises generally where a necessity exists, and where such second public use will not be destructive of the first. *Smith v. Gould,* 59 Wis. 631; 1 Lewis, Eminent Domain (2d ed.) § 276; *Mobile & G. R. Co. v. Alabama M. R. Co.* 87 Ala. 501; *Providence & W. R. Co. v. Norwich & W. R. Co.* 138 Mass. 277; *N. Y., H. & N. R. Co. v. B., H. & E. R. Co.* 36 Conn. 196, 198; *Central B. Corp. v. Lowell,* 4 Gray, 474; *Springfield v. Conn. River R. Co.* 4 Cush. 63; *Boston v. Brookline,* 156 Mass. 172, 30 N. E. 611. See, also, *Chicago, R. I. & P. R. Co. v. Lake,* 71 Ill. 333; *Easthampton v. Hampshire Co. Comm'rs,* 154 Mass. 424, 28

N. E. 298; *Rominger v. Simmons,* 88 Ind. 453; *Pittsburgh J. R. Co. v. Allegheny V. R. Co.* 146 Pa. St. 297; *South & North Ala. R. Co. v. Highland Ave. & B. R. Co.* 119 Ala. 105; *St. Louis, H. & K. C. R. Co. v. Hannibal U. D. Co.* 125 Mo. 82; *Scranton G. & W. Co. v. Northern C. & I. Co.* 192 Pa. St. 80; 1 Lewis, Eminent Domain (2d ed.) pp. 664–666; *Butte, A. & P. R. Co. v. Montana U. R. Co.* 16 Mont. 504, 41 Pac. 232; *Cincinnati, S. & C. R. Co. v. Belle Centre,* 48 Ohio St. 273, 27 N. E. 464; *Peoria, P. & J. R. Co. v. Peoria & S. R. Co.* 66 Ill. 174; *Denver P. & I. Co. v. Denver & R. G. R. Co.* 30 Colo. 204, 69 Pac. 568. The property of Mitchell Park sought to be taken is not in actual use for park purposes and therefore may be acquired the same as if owned by an individual. *C. & N. W. R. Co. v. C. & E. R. Co.* 112 Ill. 589; *Butte, A. & P. R. Co. v. Montana U. R. Co.* 16 Mont. 504, 41 Pac. 232; *Mobile & G. R. Co. v. Alabama M. R. Co.* 87 Ala. 501; *N. Y., H. & N. R. Co. v. B., H. & E. R. Co.* 36 Conn. 196; *N. Y. C. & H. R. R. Co. v. Met. G. Co.* 63 N. Y. 326; *Chicago W. D. R. Co. v. Met. W. S. El. R. Co.* 152 Ill. 519; *Youghiogheny B. Co. v. Pittsburg & C. R. Co.* 201 Pa. St. 457.

The following opinion was filed January 31, 1905:

SIEBECKER, J. The statute providing for the acquisition of real estate by railroad corporations for the purposes of their organization prescribes (sec. 1846, Stats. 1898) what shall be stated in the petition for the appointment of commissioners of appraisal. Any person whose estate or interest is affected by the proceedings may show cause against granting the prayer of the petition. After a hearing of the petition the court or judge shall determine "whether the railroad corporation is entitled to take the whole or any part of the land sought to be acquired, and if no sufficient cause is shown against granting the prayer of the petition shall make an order appointing" commissioners "to ascertain and appraise

the compensation to be made to the owners or persons inter-
ested in the real estate determined necessary to be taken . . .
for the purposes of the corporation." It is urged that no de-
termination should have been made in this proceeding hold-
ing that petitioner is entitled to take any of the lands sought
to be acquired for railroad uses, upon the ground that it ap-
peared that petitioner is not a duly incorporated railroad cor-
poration under the laws of the state. Upon the hearing peti-
tioner produced its patent, properly executed and issued by
the state of Wisconsin, granting to the persons named therein
full authority to exercise the powers and privileges of a rail-
road corporation in accordance with the articles of incorpora-
tion and the laws of the state. Under sec. 4181, Stats. 1898,
any such patent of incorporation "shall be received as con-
clusive evidence of the existence of the corporation mentioned
therein . . . in all cases where such facts are collaterally in-
volved, and as presumptive evidence thereof and of the facts
therein stated in all other cases." It is suggested that the
patent and its conclusive effect cannot incumber this inquiry
in this proceeding, because the statute under which petitioner
proceeds requires it to allege and prove its due incorporation.
True, such are the statutory requirements. These require-
ments are, however, met by proper allegation of incorporation
and the production of the patent in proof thereof. We can
perceive no difference in the conclusive effect of the patent
as evidence of such fact in this proceeding and such effect in
a suit between this corporation and any other adverse party.
The rule is well established in this state that the state alone
can inquire into and object to the unauthorized exercise of
corporate powers. *Allen v. Clausen,* 114 Wis. 244, 90 N. W.
181, and cases cited. The right of the state to confer corpo-
rate powers and privileges upon petitioner is unquestioned,
and the inquiry whether they are regularly and properly con-
ferred cannot arise in this proceeding, since the production

of the patent establishes this fact and precludes all further inquiry as to its corporate existence.

It is also claimed that the proof fails to show the required places from and to which such railroad is to be constructed or maintained and operated, in that but one place within this state is named; the other being within the state of Illinois. We cannot accede to appellants' construction of this statute that this requirement applies to the termini within this state. The language of the statute plainly directs that the places from and to which the road is to be constructed shall be given, but there is nothing in the provision indicating that it is limited to places within this state; nor is there any valid objection to a requirement that the termini of the road shall be given, even though the termini are without the state. This corporation may exercise all its rights and privileges in any other state, subject to the laws thereof, under sec. 1830, Stats. 1898, and under such powers may propose to construct a line of railroad reaching beyond the boundaries of this state. We think the termini of the road are properly designated, and sufficiently definite to meet the calls of the statute. *St. Louis, H. & K. C. R. Co. v. Hannibal U. D. Co.* 125 Mo. 82, 28 S. W. 483.

The requirement that the length of the proposed railroad be given manifestly refers to the length of the road between the termini, and is not limited to the portion of the road within the boundaries of this state. It is sufficient if the portion of the proposed road within the state be designated by naming each county in this state through or into which it is designed to be located and built.

It must appear that the petitioner "has surveyed its route over the land sought to be acquired for its main line, and has actually staked out the center line of the proposed road over the ground desired for such main line," and "that the route of said road has been located by its board of directors upon

the line so staked out." It is argued that this provision demands as a condition for acquiring the right to condemn a portion of the land over which the proposed road is located that the whole route between the termini must have been surveyed. The words in their natural application to the circumstances of a condemnation proceeding indicate clearly and definitely that a survey of the route refers to that part of the main line covering the lands sought to be acquired in this specific proceeding. This construction harmonizes with the requirement of staking out the center line of the route over these lands and its location thereon by its board of directors.

It is also alleged that the court erred in appointing commissioners, in view of the fact that the proceedings had been dismissed as to a part of the lands described on account of insufficiency of notice to the real-estate owners, thus leaving the line of the road included in the proceedings without continuity. This action of the court seems proper. There is nothing in the statutes indicating that only a continuous part of the main line of the proposed road can be included in a proceeding to condemn the right of way. The method of procedure to acquire such lands in its practical application suggests the necessity of applying for condemnation of parts of the right of way separately, and there is nothing in the exercise of this right, or in the terms of the statute granting it, in conflict therewith. Furthermore, we discover no valid grounds for the contention that the court had lost jurisdiction to proceed as to those parcels wherein proper notice was given, though dismissal was required as to some of the lands for want of such notice to those interested. The proceeding is not to be construed too strictly. A liberal rule should prevail so long as the rights of the parties and the protection of their property interests are secured.

The court's finding that the petitioner intended in good faith to construct the road authorized by its charter is vigor-

In re Milwaukee Southern R. Co. 124 Wis. 490.

ously assailed as not sustained by the record. Whether this question is open to inquiry under the statute is in dispute between the parties. It is suggested by the petitioner that it cannot be litigated in this proceeding because the issuance of a patent conclusively presumes this fact to be established as a condition precedent to granting it the corporate powers to build the proposed railroad. In opposition to this it is urged that the statute expressly requires this fact to be stated in the petition, and it is therefore an issue to be litigated upon the hearing. The requirement that this fact shall be alleged in the petition is not in itself a sufficient reason for deeming it an issuable one, for the statute also requires that the fact of petitioner's incorporation shall be alleged; yet upon the production of the patent the inquiry as to that fact, *for the purposes of this proceeding, is foreclosed.* So it has been held by this court that, though the persons interested may show cause against the granting of the prayer for condemnation of a certain right of way selected by the company, the question whether lands so selected for its track as needed are necessary for building its road in that place instead of some other convenient place is not an issuable fact, but one committed entirely to the discretion of the company. *Ford v. C. & N. W. R. Co.* 14 Wis. 609.

We are unable to perceive any necessary or beneficial object to be attained by permitting each landowner to litigate this question and inquire into the intent of the corporation of carrying out its declared purpose, when the state has issued its patent and bestowed the grant of power to build, operate, and maintain this railroad. The grant of such important powers and privileges must be upon the grounds that the state is satisfied to bestow them upon the particular persons under the established facts and circumstances, in the belief that the incorporators will fulfil the purposes of the grant, and that they have complied with all the necessary conditions precedent to becoming vested therewith. The provision of the statute

requiring that an affidavit by at least three persons named therein shall be annexed to the articles of incorporation before filing with the secretary of state, stating "that it is intended in good faith to construct or maintain and operate the railroad therein mentioned," significantly indicates that the legislature intended that the fact of intention in good faith to construct the road authorized by the charter is thereby established as a fact, and as a necessary condition precedent to the issuance of a patent of incorporation. This requirement negatives the construction that each landowner whose real estate is sought to be taken has the right to litigate it. It also seems that such a procedure would render the proceeding inoperative and ineffectual as a method of acquiring real estate for a right of way, because of the liability of conflicting and inconsistent determinations of this issue in the various courts having jurisdiction of the matter. Such an intent should not be imputed to the legislature if another reasonable one can be read out of the statutes. We are led to the conclusion that the fact that petitioner intended in good faith to construct the road authorized by its charter must be held as conclusively established by the production of its patent. Our attention has been directed to the varying conclusions of the courts upon this question in different jurisdictions, but we believe this result preserves the statutory objects and purposes, and protects the rights of all persons coming within its operation.

The city of *Milwaukee* contends that petitioner cannot proceed to condemn land within the city without first having obtained the consent of the city to construct its railroad over and across the city streets and thoroughfares. By sec. 1828, Stats. 1898 (subd. 5), a railroad corporation is given the power to construct its railroad tracks across, along, or upon streets or highways which its route shall intersect or touch in the manner therein prescribed. The right thus conferred is in no way superseded or taken away by the power given to the city "to regulate and prohibit the use of locomotive en-

gines within the city and to control the location of railroad tracks." The powers thus conferred upon the city and that conferred upon the railroads must be exercised by them respectively within the limits evidently intended by the legislature. It is apparent that the railroad companies are given the absolute right to construct their lines across, along, or upon a city street, and this cannot be interfered with by the city; but the city may within its police power regulate the location of railroad tracks in such manner as the situation may reasonably require, but such right is not paramount to the power given to railroads to use the streets as prescribed. *Wis. Tel. Co. v. Oshkosh*, 62 Wis. 32, 21 N. W. 828; 2 Lewis, Eminent Domain, § 395; *In re N. Y. C. & H. R. R. Co.* 77 N. Y. 248.

It is also contended by the appellant city of *Milwaukee* that petitioner has no power to take any part of the land devoted to the purposes of a public park, and the trial court erred in holding that petitioner had established its right to take a strip off Mitchell Park for its route. The legislative right, under the right of eminent domain, to take property already subjected to a public use, and to apply it to a public use different from that to which it is devoted, is well recognized by legislation authorizing the taking of public highways, canals, railway property, and lands devoted to other public purposes. The right to exercise such a power must rest on express legislative grant, or it must arise by necessary implication from the powers and privileges so granted, or it must appear that the rights granted, when applied to the conditions and circumstances covered by it, cannot be beneficially exercised without the taking of property already devoted to a public use. The power of petitioner to condemn property for railroad purposes is a general grant to build the road between the termini designated in its articles of incorporation, and contains no express provision authorizing the taking of any property already devoted to public purposes, except in so far

as the legislature has provided that certain property devoted to public uses, such as public highways, state lands, and other railroad property, may be taken. Nowhere is authority given to take any part of public parks. The question then arises whether petitioner is authorized to take such property by necessary implication. The result of adjudications in determining what rights are conferred by legislation of this nature is concisely stated in *Winona & St. P. R. Co. v. Watertown,* 4 S. Dak. 323, 56 N. W. 1077:

"The principle of construction almost universally applied by the courts in such cases is that mere general language granting the power to condemn is not to be taken as including the power to appropriate land already subjected to another public use, particularly where the subsequent use will interfere with the former. Power to do that can be granted only by express language covering the particular case, or by necessary implication; and such necessary implication will not ordinarily exist where the general power can be beneficially exercised without taking the particular land in question, or where the two uses are necessarily inconsistent." (Cases cited.)

The legislative policy of the state should also be observed in determining what rights such a general grant is intended to embrace. An examination of the legislative declarations discloses that certain kinds of property devoted to public uses may be condemned and taken for railroad purposes, but no provision of the law grants the right expressly or by necessary implication to so take lands devoted to the use of a public park. A legislative grant to subject such property to another public use is one in derogation of existing law, and renders the rule of *"Expressio unius est exclusio alterius"* applicable to this subject. Whatever is embraced in the statutes giving this right leads clearly and satisfactorily to the conclusion that it was intended that the right should be confined to the particular property therein specified.

In re Milwaukee Southern R. Co. 124 Wis. 490.

It is argued that, since the court found it was necessary to take the designated part of Mitchell Park to enable petitioner to build its railroad, the calls of the statute have been met by necessary implication, when applied to the facts and circumstances of the case. It is true some courts hold that the grant of a power to build a railroad may by necessary implication be construed to authorize the taking of property already subjected to public use, when it appears that without such a taking it would be well-nigh impossible to exercise it beneficially. This construction has been applied in cases of general grants, where it appeared that the proposed railroad could not be built unless it be permitted to cross the tracks of another railroad, where it is apparent that the grant would be ineffectual without the right to make such crossing (*Providence & W. R. Co. v. N. & W. R. Co.* 138 Mass. 277; *State v. Montclair R. Co.* 35 N. J. Law, 328) ; or where it was apparent the proposed railroad could not be built unless it be permitted to cross public highways (*Starr v. C. & A. R. Co.* 24 N. J. Law, 592) ; but no right to occupy highways longitudinally has been implied (*Springfield v. C. R. R. Co.* 4 Cush. 63). In this case we are not confronted with a situation requiring a determination of this question, for it is manifest from the facts established in the proceeding that petitioner can efficiently and beneficially exercise the power of locating and building its road between the termini without invading Mitchell Park. Under these circumstances and conditions no necessity can be said to exist for taking any portion of this public park. *Springfield v. C. R. R. Co.* 4 Cush. 63 ; *In re Boston & A. R. Co.* 53 N. Y. 574; *Adirondack R. Co. v. State,* 176 U. S. 335, 20 Sup. Ct. 460; *Butte, A. & P. R. Co. v. M. U. R. Co.* 16 Mont. 504, 41 Pac. 232; *Wood v. M. & B. R. Co.* 68 Ga. 539; 1 Lewis, Eminent Domain, § 276; *In re Application of Buffalo,* 68 N. Y. 167; *Mobile & G. R. Co. v. A. M. R. Co.* 87 Ala. 501, 6 South. 404.

It follows from these conclusions that the court erred in appointing commissioners as prayed for.

*By the Court.*—The order of the circuit court appointing commissioners is reversed, and the proceeding remanded with directions to dismiss the application.

The following opinion was filed February 15, 1905:

Dodge, J. While I concur in the reversal of the order appealed from and with the reasons upon which our judgment rests, I cannot bring myself to assent to certain views, expressed in the opinion, which indicate that, but for inclusion of park lands, the order would be affirmed. Stats. 1898, sec. 1846, requires that a railroad company, in order to condemn land for its main line, shall allege in its petition that it is duly incorporated and that "it is its intention in good faith to construct the road authorized by its charter." Now, with reference to these allegations, I understand the opinion to declare, first, that they are not issuable, and, secondly, that, if issuable, they are both conclusively supported by production of the patent granted by the secretary of state. I do not feel at liberty to convict the legislature of the absurdity of industriously requiring a petitioner to assert such facts, wholly within its own knowledge and easy of proof, if true, with no purpose whatever. If they are not issuable, then any individual or association of individuals not incorporated at all may, in practical result, institute and carry through such condemnation, to the invasion of most sacred private rights and without any justification in either a purpose or duty on petitioner's part to perform any public service to justify the exercise of this high governmental prerogative. I cannot doubt that the statute, so construed, would in practical effect authorize the taking of property for a purely private purpose, in defiance of both the state and national constitutions. I venture the assertion that nowhere else in the multitude of

statutes prescribing inimical proceedings, with right of defense, has it been held that requirement that the preliminary • pleadings allege a fact did not also require that fact to be proved, if denied. *Wis. Cent. Co. v. Kneale,* 79 Wis. 89, 48 N. W. 248. The opinion proceeds, however, to declare that, even if these two alleged facts be issuable, they are conclusively established by production in evidence of the patent from the state. I grant this as to the first, namely, the fact of corporate existence, for the very sufficient reason that the statute (sec. 4181) expressly so provides; but I search that section and the statute book at large in vain for any legislation giving to such patent any force as evidence of the good-faith intent to build the railroad. The maxim *"Expressio unius est exclusio alterius"* would therefore seem to present an impregnable obstacle to such a holding. Again, the legislative purpose that this intent should be matter of substance in an attempt to condemn for a main line is conclusively evinced by the omission of any similar requirement in case of condemnation for station grounds or yards, where is presupposed existence of a main track, which is thus legislatively made sufficient proof of the intent and ability to serve a public purpose.

It is said in the opinion that the court has considered the varying conclusions of the courts on this question in different jurisdictions. If any of such conclusions vary toward support of the views expressed, I have been unable to find them. None are cited so much as suggesting nonissuability of an allegation of either good faith or corporate existence on the part of a corporation, not public or municipal, when required by statute. The contrary is held in *Hodgerson v. St. L., C. & St. P. R. Co.* 160 Ill. 430, 43 N. E. 614; *Railway Co. v. Petty,* 57 Ark. 359, 21 S. W. 884; *Chicago, B. & N. R. Co. v. Porter,* 43 Minn. 527, 46 N. W. 75; *Atlantic & O. R. Co. v. Sullivant,* 5 Ohio St. 276; *Peoria & P. U. R. Co. v. P. & F. R. Co.* 105 Ill. 110; *In re Metropolitan E. R. Co.* 12 N. Y.

Supp. 506, 508; *In re Metropolitan T. Co.* 111 N. Y. 588, ·601, 19 N. E. 645. In the last of these the statute and the situation were practically identical with the present, and the court's argument seems to me unanswerable.

Even if the question were entirely *res nova* and without suggestion from other statutes as to legislative intent, I could not doubt the purpose to require, as condition precedent to the order of condemnation, full showing of good-faith intent to build a railroad. The right of eminent domain, to take from an individual his private property which he wishes to retain, is one of the most extreme powers of government and, under our constitution, can be exercised only for a public purpose. When that most oppressive power is delegated to a railroad corporation, whose primary purpose is private gain, the legislative guardians of the people's rights would be derelict indeed if they did not so hedge about the grant as to preclude to the utmost the perversion of that power from the public purpose, which alone can justify it, to the private advantage of the delegatee, since such attempts are to be expected from the very nature of mankind, especially when in corporate association. Only because a railroad serves a public purpose and function can the delegation to a railroad company be justified at all. How abusive, therefore, would it be to confer this high prerogative upon a corporation which neither does nor intends to serve any such purpose. Legislatures are not to be easily suspected of such intention. Terminal grounds in *Milwaukee* might well be so essential to the public purpose to be served by a railroad running over an extensive section of country that the exercise of this high power might properly be conferred upon such a company; but, obviously, that power ought not to be conferred upon some corporation which has no such purpose, but desires merely to acquire such rights in property for purposes of speculation, or even of blackmail. I by no means suggest that any such purpose is entertained by the present corporation; but it is a

possible motive, and therefore offers a most cogent reason why the legislature should have deemed the *bona fide* intent to build the whole road an essential fact preliminary to the casting upon private property of even the cloud resulting from an order of condemnation, though the proceedings should go no further. One of the appellants here presents a striking illustration of the practical injury that may result merely from the institution of the proceedings. That appellant owns and operates a large factory, through which the right of way passes, severing into two parts the very building. It needs no words to paint the embarrassment under which such an owner labors during the period of uncertainty whether his property will be taken or not. He cannot commit himself to the acquirement of a new site and new buildings, he cannot safely enlarge his business or equipment at the old stand, nor can he enter into large engagements to supply his product. Why should not such a sufferer yield readily to demands for blackmail to terminate the peril against which the present construction of the law offers him no protection?

For such reasons as these, were there no others, I cannot but believe that the legislature intended to require the existence of the very fact of a good-faith purpose to build a railroad as a condition of the disturbance of private rights of property by a corporation. Unless that fact is required to be established by judicial investigation on the hearing following the petition for condemnation, it is not required to exist. Neither the affidavits of the incorporators nor the verification to the petition constitutes the fact. Upon the doctrine now announced by the court all such affidavits may be absolutely false, neither the intent nor the ability to serve any public purpose may exist at all, and yet the confiscation of private property proceed to consummation. Not even is there the usual probability of criminal responsibility to deter the falsification of such affidavits, for the affiants need not either reside or come within this state, so as to be within reach of its

process.   I am therefore of opinion that the question of the good-faith intent of a petitioning railroad corporation to build the road authorized by its charter is an issuable one, to be resolved upon any evidence relevant thereto.

I ought, perhaps, to note an inaccuracy in the opinion, in that it states that the trial court found that the petitioner did intend in good faith to build the road authorized by its charter.   The finding made is merely that it intends to build such road "upon, over, and across the lands mentioned and described in the petition."   Those lands are all in Milwaukee county, while the road authorized by the charter extends from Milwaukee to East St. Louis, in Illinois.   I can find in the record no evidence of any purpose, plan, or ability to build the road so authorized.

Winslow, J.   I concur in the separate opinion of Mr. Justice Dodge.

Upon a motion for a rehearing there was a brief by *John F. Burke,* attorney, and *Henry C. Wood* and *Colin C. H. Fyffe,* of counsel, for the respondent.

In reply to such motion there was a brief by *Carl Runge,* city attorney of *Milwaukee,* and *Timlin & Glicksman* for *Canar* and *Higby,* and a separate brief by *Miller, Noyes & Miller* for the *International Harvester Company.*

The motion was denied April 5, 1905.

Kerwin, J., took no part in the decision of this case.