MINNEAPOLIS WESTERN RAILWAY COMPANY v. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY and Others.[1]

June 28, 1895.

Nos. 9510, 9511, 9512—(108, 109, 110).

**Railway—Receiver—Right to Condemn.**

The receiver of an insolvent railroad corporation has no power to insti- tute condemnation proceedings in behalf of the railway company without authority so to do first given by the court in which the receivership pro- ceedings were pending.

**Right to Condemn Land of Another Railway.**

One railroad company has no authority, under the general statutes of this state, to condemn the lands of another railroad company occupied or used or necessary for the prosecution of its railroad business, except for crossing purposes. A general power to exercise the right of eminent domain gives no such authority.

**Former Occupancy.**

The fact that the appellant railway company has used and occupied the premises under a revocable license from the owner, before the re- spondent company purchased them, gives the former no special or addi- tional rights to condemn the premises, such condemnation not having been instituted until after the appellant company acquired them, and until after the final determination of the ejectment suit brought against it by the respondent company.

[1] Reported in 63 N. W. 1035.

**Buck, J., is of the Opinion:**

(1) That the receiver of an insolvent railroad corporation has no legal power to institute condemnation proceedings. (2) That under the constitution the power of the court is purely judicial, and that where an insolvent railroad company is in the hands of a receiver, under the control of the court, it has no inherent power to authorize the institution of condemnation proceedings by the receiver, or to extend or build additional lines, and where it does so it is a usurpation of power, and void for want of jurisdiction.

Three appeals from the district court for Hennepin county, Smith, J. Affirmed.

(1) Petition by Minneapolis & St. Louis Railway Company, and W. H. Truesdale as its receiver, defendants in an action for ejectment brought by Minneapolis Western Railway Company against said defendants and another, for the appointment of commissioners to determine the compensation to be paid by petitioners for appropriating to railroad use by petitioners certain lands referred to in the opinion as the "33-feet strip," and for the determination of the right to use said lands jointly with plaintiff railway company. Plaintiff filed objections, and upon hearing thereon, the court made an order denying the petition, without prejudice to petitioners' right to renew their application in case the supreme court should determine that the right existed to condemn a right of way over the premises referred to in the opinion as the "trestle tracks." From this order defendants appealed.

(2) Petition by the same petitioners and defendants for the same relief in respect to the right to use the tracks and right of way over certain tracks and the trestle upon which said tracks were built, and the real estate upon which said trestle was constructed, said premises being referred to in the opinion as the "trestle tracks." Plaintiff filed objections, and upon hearing thereon the court made an order denying the petition. From this order petitioners appealed.

(3) Petition by the same petitioners and defendants in the action of ejectment above referred to for an order restraining plaintiff therein from ejecting petitioners from the premises referred to as the "33-feet strip" and the "trestle tracks" pending the hearing upon said petitions to condemn. An order to show cause and a temporary restraining order were issued by the court; and there-

after, upon the hearing of plaintiff's motion to dissolve the restraining order, an order was made modifying the restraining order and restraining plaintiff from removing the tracks and instrumentalities constructed on the "33-feet strip" until defendants could apply to the supreme court, in accordance with the charter of the St. Louis road (see Sess. Laws 1853, c. 10, § 19 [Collat. St. 1853, c. 66, § 19]) for permission to acquire right of way over the "trestle tracks," provided this should not affect the right of plaintiff to change the angle of any crossing or location of any frog or switch thereon, which should not affect the vested rights of defendants, if any; and that pending such application and until further order, defendants should not have the right to use the tracks upon the "33-feet strip" or the "trestle tracks." From this order, so far as it modified the previous restraining order and denied defendants the right to use the tracks, defendants appealed.

*Albert E. Clarke* and *W. F. Booth*, for appellants.

*W. E. Dodge*, for respondent.

BUCK, J. There are three appeals before this court upon the same subject-matter, and which, by the agreement of the parties, are to be considered together, as each is dependent upon the other, and the question at issue cannot be well understood and determined without reference to the record in all. There does not appear to be much controversy as to the facts. The question involved in the appeals is whether the appellant railway company has the right to condemn certain land for railroad use.

These appeals came before this court from the following described proceedings: First. A petition in the ejectment case brought by the Minneapolis Western Railway Company against the Minneapolis & St. Louis Railway Company and others, whereby the last-named company and its receiver asks to have what is known in the record as the "33-feet strip" condemned, so that it may use such strip jointly with this respondent. Second. A petition by the appellant to condemn the right of way for the joint use of the parties over what is described as the "trestle tracks." Third. A petition made by the appellants for an order restraining respondents from ejecting the appellants from the premises referred to as the "33-feet strip" and the "trestle tracks," pending the hearing upon the peti-

tions to condemn. Upon all of these proceedings the court below decided against these appellants.

The premises in controversy are situate in the city of Minneapolis, and near or adjacent to a large number of mills and elevators, and the railroad tracks thereon furnish facilities for the transportation business done by these mills and elevators. At all times between the year 1872 and June 13, 1891, the legal title to the premises was in the Minneapolis Mill Company, a corporation with its principal place of business at the city of Minneapolis. The appellant railroad company, with the consent of the mill company, entered upon the so-called "33-feet strip," and constructed its railroad tracks thereon, in the years 1875 and 1876, and has ever since maintained its tracks thereon, and operated its cars over said tracks, although it never had any title to the premises.

On June 13, 1891, the Minneapolis Mill Company executed and delivered to the Minneapolis Western Railway Company a deed of the premises in controversy; but, the description in the deed not being satisfactory, another deed of the premises was executed by the same grantors and delivered to same grantee on December 23, 1891, and on the last-named day the grantee above named made demand for possession of the premises, which being refused it brought an ejectment suit to recover possession thereof on January 23, 1892. This 33-feet strip is not a part of the main line of the Minneapolis & St. Louis Railway Company, but a branch or side track extending from its main line alongside of the mills and elevators above referred to. The trestle tracks are an extension of the 33-feet strip, and these tracks were built by the mill company, although used by the appellant railroad company for the same purpose as the other tracks. The ejectment suit was brought to recover possession of the 33-feet strip, and upon trial the court found in favor of the plaintiff, and upon appeal to this court the judgment was affirmed. Minneapolis Western Ry. Co. v. Minneapolis & St. L. Ry. Co., 58 Minn. 128, 59 N. W. 983.

It appeared that the appellant railroad company was merely a parol licensee of the mill company during the whole time that it operated its cars over the tracks upon said 33-feet strip, and that the mill company had a right to terminate at any time and did terminate the license on June 13, 1891. After the decision of the

case in this court the appellant railroad then sought to have the premises condemned for its right of way by proceedings attempted by it in the same ejectment suit, after two trials and final judgment, as we understand the whole record. We assume that this attempt to have the land condemned for railroad purposes was made pursuant to G. S. 1894, §§ 2657–2660, which provide for ascertaining the compensation for lands taken by a railroad company, pending and by proceedings incident to an action in ejectment by the landowner against the railroad company. All of the questions raised in this proceeding and by the restraining order and the attempt to condemn the trestle tracks finally resolve themselves into the question of whether the appellant railway company has the right to condemn both pieces of land for railroad use.

The court below based its decision upon the ground that the right of the petitioners to condemn the right of way over the 33-feet strip was dependent upon its right to acquire a right of way over the trestle tracks, and unless the appellant railroad had such right the 33-feet strip would not afford them access to the mills adjacent to the trestle, and consequently there would be no necessity for the taking of the 33-feet strip, and that the right of such appellants to acquire the right of way over the trestle tracks does not exist under the statute, or that if such right exists it is by virtue of Sess. Laws 1853, c. 10, § 19 (Collat. St. 1853, c. 66), and acts amendatory thereof, which provides that the supreme court may fix the terms upon which one railroad company may enter upon and over the railroad of any other company.

The respondent in the court below expressly objected to the receiver proceeding to have the property condemned for right of way, because he had not obtained leave of the court so to do. We think objection is well taken, and that without such leave affirmatively appearing the receiver had no authority to bring an action or take any proceedings to have the property in controversy condemned for its right of way, without consulting the court making the appointment. It is a "well-nigh universal rule that a receiver may not bring any suit without having first obtained leave of the court." Beach, Rec. § 650. In this case there is no pretense that leave to institute these proceedings was obtained from the court; and, while the proceedings were instituted in the same court by which the

receiver was appointed, yet we do not think that in such a case as this such authority should be presumed.   Such arbitrary power on the part of a receiver, and the magnitude of the results of its exercise, render it unwarrantable and void.   While a receiver has some discretion in the execution of the trust committed to his care, this is not an arbitrary discretion, but one limited by the law, and beyond that he should not go.   He did exceed his discretionary powers, and hence the proceedings were invalid.

This view of the case would of itself lead to an affirmance of the order of the court below, but in view of the importance of the questions involved we will consider the further question of the right of the appellant to condemn the property in controversy for a right of way for railroad purposes.   We refer now more particularly to that portion known as the "33-feet strip," which the appellant claims it has used for a great many years for railroad purposes, and that priority of location and occupation give it priority of right to condemn, and that the respondent cannot, by purchase of the land upon which appellant has located and operated its track, deprive the occupying company of the prior right to condemn the land and remain in possession.   We may concede that, as a general proposition of law, the contention of the appellant is correct, but when applied to the facts in this case its vice rests in the fact that during all of the time it operated these tracks, and until the sale thereof to respondent, it was there as a mere parol licensee of the Minneapolis Mill Company, the grantor of the respondent.   This was so decided by this court. See Minneapolis Western Ry. Co. v. Minneapolis & St. L. Ry. Co., supra.

This 33-feet strip, during the time it was used by appellant, was owned by the Minneapolis Mill Company until June 13, 1891, when it conveyed it to this respondent, a railroad corporation, and also conveyed to the respondent what is known as the "trestle tracks," an extension of the 33-feet strip.   These trestle tracks were constructed and owned by the Minneapolis Mill Company. It does not appear that the appellant railroad ever entered upon the premises in controversy with the intention of purchasing or condemning them for its railroad purposes.   Its possession was permissive, not hostile to the true owner, up to the time when the title to the premises passed to another railroad corporation, which

desires and needs it for railroad purposes. It never did an act or expressed a desire or gave notice through its officers that it desired to obtain a permanent right of way over these premises. Through its negligence or perverseness it omitted to take any steps to secure as its own this right of way until another railroad corporation had secured title thereto. If priority of location and occupation give priority of right it can only be where they are made for the express purpose of securing, not merely a temporary right, as licensee, but a permanent one. The bare fact that its use and possession was under a revocable parol license rebuts the presumption that its location was intended to be permanent. It acquired no vested right, because its only right was subject to be revoked at any moment, which it well knew, and which it seems not to have fully realized until the property had passed into the possession of another railroad corporation. Up to that instant it was there as licensee. Whether it claimed a lawful right to be there by priority of location is not material, because the court found against it upon this very material question. That question has been adjudicated against it. The moment the mill company conveyed the premises to the respondent, that moment it had the right of possession, and the appellant railroad made no location after that time, but after demand of possession it was there by wrong, and upon that wrongful possession it cannot predicate any claim of right to condemn, not even for its joint use.

We are not determining what the rights of the appellant railroad company would have been as against the Minneapolis Mill Company, if it still owned the premises in controversy, but that respondent having in good faith purchased the premises for railroad purposes before the appellant company took any legal steps to secure the right of way by purchase or condemnation, and before it in any way indicated its intent or asserted its right to secure or hold the premises for permanent railroad use, its rights must be deemed subordinate to those of the respondent, and especially as it instituted no condemnation proceedings until after its defeat and the final determination in the second ejectment suit between the parties. We think that the rule is well established that when property has already been appropriated for public use in the lawful and proper exercise of the power of eminent domain it cannot be

taken for another public use which will thereby wholly, or to any great extent in part, defeat the former use, unless the power to make such second appropriation is expressly granted, or arises from necessary implication. St. Paul Union Depot Co. v. City of St. Paul, 30 Minn. 359, 15 N. W. 684.

There may be instances where public necessity is of such a nature that one railroad company might be empowered to condemn and appropriate the property of another, but it would require a legislative enactment to authorize such a proceeding. If one railroad company could, at its option, condemn the property of another railroad company, we do not see why such proceedings could not be continued as often as each different company desired. The law of eminent domain does not sanction any such absurdity, especially where the public use sought is identical with the one already enjoyed. Our statute expressly authorizes one railroad company to cross the tracks of another, but that is a temporary use, and one frequently of absolute necessity, and does not materially interfere with the other railroad's enjoyment of its property. In addition to this general rule of law this question is settled by a legislative enactment of our own state. G. S. 1894, § 2647, contains this provision, viz. "provided that nothing in this act contained shall be construed as authorizing or empowering said railroad company or any of them to condemn, appropriate or use any lands, property or rights or franchises of any other railroad corporation occupied or in use or necessary for the operation of its railroad, or the transaction of its business by such other corporation." This law is aplicable to corporations created by special charter as well as to those organized under the general laws of the state. Id. § 2656.

The other members of this court concur in the foregoing opinion; but the writer hereof is also of the opinion: (1) That the receiver of an insolvent railroad corporation has no legal power to institute condemnation proceedings. (2) That, under the constitution, the power of the court is purely judicial, and that where an insolvent railroad company is in the hands of a receiver under the control of the court it has no inherent power to authorize the receiver to institute condemnation proceedings, or to extend or build additional lines; and where it does so it is a usurpation of power, and void for

want of jurisdiction. (3) That it is the duty of a receiver to take only such steps .as may be reasonably necessary to protect the property in his hands from destruction, waste, or spoliation, and that only in extraordinary cases, and where there is an irresistible necessity, should he continue such business for a long period of time. (4) That it is neither the intent, spirit, nor letter of the law of this country that railroads should be operated for a long series of years by the courts, through the medium of receivers, as it imposes burdens and responsibilities upon the courts which are nonjudicial and not in harmony with the true theory of American jurisprudence.

This case, however, is decided on the questions upon which this court is unanimous, and the result is that the order made by the court below in each of the respective cases is affirmed.