MINNESOTA POWER & LIGHT COMPANY v. STATE.[1]

April 26, 1929.

No. 27,432.

G. A. Youngquist, Attorney General, and William H. Gurnee and W. K. Montague, Assistant Attorneys General, for the state.

Washburn, Bailey & Mitchell, for respondent.

OLSEN, C.

Appeal by the state from a judgment in condemnation proceedings.

The respondent, Minnesota Power & Light Company, seeks to condemn a perpetual easement over state-owned lands in the Jay Cooke State Park for a power line for transmitting electric current. Respondent is a public service corporation owning and operating a water power and plant on the St. Louis river near the village of Thomson and other like plants at places in the northern part of this

[1]Reported in 225 N. W. 164.

state.   These plants are connected by transmission lines into one system.   Power or transmission lines extend from these plants into different municipalities, and electric current is thereby distributed and sold to municipalities and private parties for light and power.

Jay Cooke State Park was established by L. 1915, p. 510, c. 374, whereby the lands to be acquired therefor by the state were to be and were forever dedicated to the public use and to be suitably improved and maintained as a public park.   It is further provided by G. S. 1923 (1 Mason, 1927) § 6459, that state parks shall be preserved and maintained for the free use and enjoyment of the general public.   G. S. 1923, §§ 5615 and 5616, as amended, 1 Mason Minn. St. id. protect game birds and quadrupeds in state parks and prevent hunting therein.   G. S. 1923 (1 Mason, 1927) § 6462, makes it a misdemeanor wilfully to cut, injure, or destroy live trees, shrubs, evergreens or ornamental plants therein.   The park was duly established and is being maintained as a state park under the laws of the state.   The policy of the state, as indicated in these and other laws, is to preserve and maintain state parks intact and free from interference or change, except by such improvement in the way of enhancing their natural attractiveness and usefulness for the public as the state may deem best.   The intent seems clear that no other interference with park property was intended, except in case of clear necessity.

The state, appellant here, contends that lands owned by the state and dedicated and used as a state park cannot be taken under the right of eminent domain by a public service corporation; that there is in our laws no express or clearly implied authority for such taking.

It is well settled that property owned by the state cannot be taken under the right of eminent domain, except under authority expressly conferred by the legislature or clearly implied from statutory provisions.   A general power to condemn lands is not sufficient.   The decisions are practically unanimous on this proposition and need not be cited.   The cases of Matter of City of Utica, 73 Hun, 256, 26 N. Y. S. 564, and State v. Boone County, 78 Neb.

271, 110 N. W. 629, 15 Ann. Cas. 487, may be cited as indicating the historical source of the rule.

In this state however the decisions in the two university cases, In re St. P. & N. P. Ry. Co. 34 Minn. 227, 25 N. W. 345, and University of Minnesota v. St. P. & N. P. Ry. Co. 36 Minn. 447, 31 N. W. 936, and the case of Independent School Dist. v. State, 124 Minn. 271, 144 N. W. 960, determine that by the provisions of L. 1872, p. 114, c. 53, as partly carried into the revision of 1905 and found in G. S. 1923 (2 Mason, 1927) § 6541, there is granted by implication in general terms authority to condemn for public use state-owned lands not already devoted to and actually used by the state for a public or governmental purpose or enterprise. A distinction is made in some cases between lands held by the state in a proprietary capacity, such as school and swamp lands held for sale, and lands held for some specified governmental purpose or trust, whether in use or not. The case of State ex rel. Gotzian v. District Court, 77 Minn. 248, 79 N. W. 971, may be noted. This distinction was disapproved in Independent School Dist. v. State, 124 Minn. 271, 144 N. W. 960. The use of the land and the purpose for which used have been applied as the test in this state.

When we come to land dedicated by the state, or one of its governmental agencies, for a specific public use and actually in use for the specified purpose, the rule is that general authority to condemn state-owned lands is not sufficient. In such case there must be legislative authority, expressly given or clearly implied, to take lands so dedicated and used. "The presumption is that authorized public uses are not to be interfered with under mere general terms of federal or state legislation." U. S. v. Certain Land (C. C.) 165 F. 783, 789; McCullough v. Bd. of Education, 51 Cal. 418; Atlanta v. Central R. & B. Co. 53 Ga. 120; St. L. J. & C. R. Co. v. Trustees, 43 Ill. 303; City of Edwardsville v. County of Madison, 251 Ill. 265, 96 N. E. 238, 37 L.R.A.(N.S.) 101; B. & O. & C. R. Co. v. North, 103 Ind. 486, 3 N. E. 144; City of St. Louis v. Moore, 269 Mo. 430, 190 S. W. 867; State v. Montclair Ry. Co. 35 N. J. L. 328; In re Rosebank Ave. 162 App. Div. 332, 147 N. Y. S. 638; Matter of N. Y. &

B. B. Ry. Co. 20 Hun, 201; Matter of City of Buffalo, 68 N. Y. 167; State v. C. C. Ry. Co. 37 Ohio St. 157; Oregon Ry. Co. v. City of Portland, 9 Or. 231; Appeal of Tyrone Tp. School Dist. (Pa.) 15 A. 667; W. & St. P. Ry. Co. v. City of Watertown, 4 S. D. 323, 56 N. W. 1077; Rockport & P. A. R. Co. v. State (Tex. Civ. App.) 135 S. W. 263; State v. County of Kittitas, 107 Wash. 326, 181 P. 698; In re Milwaukee S. Ry. Co. 124 Wis. 490, 102 N. W. 401. This rule is recognized and applied in our decisions hereinbefore cited.

In both of the university cases, the fact that the land sought to be taken was not devoted to or in use and not held for any public purpose was emphasized. In the second university case, the land was not owned directly by the university or the state. The court said [36 Minn. 451]:

"If the university had acquired the title, or the property had been authoritatively purchased and held for its use, doubtless these lots would not have been subject to condemnation proceedings. The case of lands or lots held for sale under legislative authority presents an entirely different question."

In the Independent School District case, 124 Minn. 271, 277, 144 N. W. 960, the court, after pointing out that the land there sought to be condemned was school land held by the state for sale and that compensation paid in the condemnation proceeding answered all of the purposes of a public sale under the constitutional provision, refers to the second university case and points out that "the court there differentiated between state lands in actual use and those not in use and subject to sale, holding, as to the latter, that they might be appropriated in condemnation proceedings. We follow and apply that decision."

Other reasons for holding that there is no clearly implied authority for the condemnation of any part of or easement over or in state park lands are readily seen. The express dedication and use of the lands for park purposes only, the careful guarding of such parks from destruction of trees, shrubs and plants therein, the exclusion of firearms and hunting therefrom, fairly indicate an intention to preserve these parks free from any easements or interference.

The authority of public service corporations to take land or easements therein is found in G. S. 1923 (2 Mason, 1927) §§ 7433, 7535. The first section authorizes condemnation of private property only. The second section is general in terms and does not contain this restriction. Except for the implied authority found in § 6541, as hereinbefore noted, there would be no authority to condemn state-owned lands. But there is no indicated intent in either of these statutes to permit condemnation of lands owned by the state and dedicated and actually used by the state for a designated public purpose. The legislative intent rather appears to the contrary, for it was thought necessary, by L. 1919, p. 391, c. 368, to authorize school districts to construct schoolhouses on state park lands. As to lands already in use for right of way of railroads, it was found necessary to grant special authority for telephone and telegraph companies to run their lines upon such right of way, under the restrictions provided in § 7535.

Where a corporation is authorized in general terms to construct a railway, telephone, telegraph, or power line, extending from one place to another, or generally, and to condemn lands or easements for such purpose, it usually cannot carry out the purposes of its franchise without crossing property already devoted to some public use, such as other railways, highways and lines. In such cases it is usually held that it has implied power to condemn right of way or easements for crossing such other railways or lines. Providence & W. R. Co. v. Norwich & W. R. Co. 138 Mass. 277; State v. Montclair Ry. Co. 35 N. J. L. 328; Wilson v. East Jersey Water Co. 78 N. J. Eq. 329, 79 A. 440; In re Milwaukee S. Ry. Co. 124 Wis. 490, 102 N. W. 401; 10 R. C. L. 199. In this state express authority for railroads to cross other railroads is conferred by G. S. 1923 (2 Mason, 1927) § 7524. The implication arises only when it appears that the condemner could not reasonably carry on its franchise powers without the appropriation. 20 C. J. 603. There is a distinction between power merely to cross a railway or other line and authority to construct a railway or line longitudinally upon or through property already devoted to a public use. Easthampton v.

Hampshire Co. Commrs. 154 Mass. 424, 28 N. E. 298, 13 L. R. A. 157. A railroad company in this state has no power to appropriate the property of another such company except for crossing purposes. M. W. Ry. Co. v. M. & St. L. Ry. Co. 61 Minn. 502, 63 N. W. 1035.

As interference with parks, cemeteries, public buildings and property segregated and devoted to the use of public institutions can generally be avoided by a deviation in route, authority to encroach upon such property will not be implied. Rockport & P. A. R. Co. v. State (Tex. Civ. App.) 135 S. W. 263; State v. County of Kittitas, 107 Wash. 326, 181 P. 698; St. L. J. & C. R. Co. v. Trustees, 43 Ill. 303; Matter of Boston & A. R. Co. 53 N. Y. 574; 10 R. C. L. 200; and cases already cited.

No express authority is shown, and there appears to be no implied authority granted to the respondent, to condemn land or easements in land owned by the state and included in and used as a state park, unless the situation shown is such as to bring respondent within rules now to be considered. As already pointed out, a corporation empowered to construct railway, telephone, telegraph and power lines may be held to have implied authority to condemn easements for crossing over lands already devoted to another public use, where it is evident that the corporation cannot otherwise reasonably carry on its business and exercise its franchise powers. In some respects this is similar to a way of necessity and constitutes public necessity for the appropriation.

Jay Cooke State Park is an irregular tract of land having an extreme length of about five and a half miles from east to west and varying in width from a quarter of a mile to two miles. It is located on both sides of the St. Louis river, which runs in a meandering course through the park from west to east. Respondent's plant is located within the park area in what may be considered the central portion thereof. We may infer that the plant is on land owned by respondent or upon which it has the right to maintain same. The greater portion of the land in the park was conveyed to the state by a deed or contract from respondent's predecessor, whereby rights to use any or all parts of the land for power lines, flow-

age, plants, and other purposes were reserved. Some additional lands were purchased by the state from other parties, conveyed to it without any reservations, and included in the park. The controversy is as to the right of respondent to condemn an easement for a power line through lands purchased by the state from other parties.

Under the deed and contract mentioned, the respondent has the reserved right to and can construct power lines from its plant running out of the park in every direction, except that for a distance of about a mile and a half along the north boundary it cannot get to the park boundary without going through lands owned by the state, upon which it has no reserved rights. The proposed power line will run northerly for about three-fourths of a mile through such state lands and thence north and east into the city of Duluth. Respondent already has one power line running from its plant in a northeasterly direction to the city of Duluth. It has four other power lines running from its plant out of the park in different directions. The record does not show any such necessity for passage through these lands as to bring the case within the rule that a corporation has implied power to condemn because otherwise it could not reasonably carry on its business and exercise its franchise powers. The only claim is that it will be more convenient and less expensive to build its line as here proposed. A mere showing of convenience and lessening of expense is not sufficient. Appeal of Sharon Ry. Co. 122 Pa. 533, 17 A. 234, 9 A. S. R. 133; M. & St. P. Ry. Co. v. City of Faribault, 23 Minn. 167; St. Paul Union Depot Co. v. City of St. Paul, 30 Minn. 359, 15 N. W. 684; In re St. P. & N. P. Ry. Co. 37 Minn. 164, 33 N. W. 701; Northwestern T. E. Co. v. C. M. & St. P. Ry. Co. 76 Minn. 334, 79 N. W. 315. As stated in the case of In re St. P. & N. P. Ry. Co. 37 Minn. 164, 166, 33 N. W. 701, "The foundation idea upon which the right of eminent domain rests is public necessity." The burden rests upon the party invoking the right to show such necessity, unless otherwise provided by statute.

The rule against taking property by right of eminent domain, without special authority, where such property is already devoted

to a public use, is generally held not to apply where the second use does not materially or seriously interfere with the first use, or where the second use is not inconsistent and the two uses may be enjoyed together without serious injury to or interference with the first use. W. & A. R. Co. v. W. U. Tel. Co. 138 Ga. 420, 75 S. E. 471, 42 L.R.A. (N.S.) 225; Little Miami & C. & X. R. Co. v. City of Dayton, 23 Ohio St. 510; Spires v. City of Los Angeles, 150 Cal. 64, 87 P. 1026, 11 Ann. Cas. 465; Codman v. Crocker, 203 Mass. 146, 89 N. E. 177, 25 L.R.A. (N.S.) 980; Pacific P. T. C. Co. v. Oregon & C. R. Co. (C. C.) 163 F. 967; Roberts v. City of Seattle, 63 Wash. 573, 116 P. 25; Rominger v. Simmons, 88 Ind. 453; Easthampton v. Hampshire Co. Commrs. 154 Mass. 424, 28 N. E. 298, 13 L. R. A. 157; City of Boston v. Brookline, 156 Mass. 172, 30 N. E. 611; 10 R. C. L. 201-202; and cases hereinbefore cited. There are decisions already cited, such as State v. County of Kittitas, 107 Wash. 326, 181 P. 698; State v. Boone County, 78 Neb. 271, 110 N. W. 629, 15 Ann. Cas. 487; and Rockport & P. A. R. Co. v. State (Tex. Civ. App.) 135 S. W. 263, which appear to deny the right to condemn lands held by the state for a public purpose, irrespective of whether or not the proposed taking would cause any material injury or interference with the prior use.

The question whether the taking will materially interfere with, or is inconsistent with, the prior use is necessarily one of fact. The easement here sought is to take a strip 50 feet wide and three-fourths of a mile long, running north from the St. Louis river to the north boundary of the park. The strip cuts in two the park north of the river near the center thereof. It is proposed to remove from this strip all trees, shrubs, and brush and to erect thereon four or five tower structures carrying a power line. Timber outside of the strip which is so tall and so near the power line that it might in falling reach the line is to be removed. Guy wires at the towers will extend beyond the strip and timber be cleared away for such wires. Respondent is to have the right to have its employes go and be upon the strip for all necessary construction, repairs, maintenance and inspection of the line. It seems reasonably clear

that the line is inconsistent with the purpose of maintaining the land as a park and that it will materially interfere with the use of the park, especially so in view of the careful provisions made by the legislature for preserving the park land from injury or interference. It will detract from the beauty and usefulness of the park and destroy trees, shrubs and plants therein, which the statute prohibits. The park already has upon parts of it two railroads, a public highway, a spillway from respondent's reservoir, five power lines and other structures, all lawfully thereon. Adding further servitudes, unless necessary, might well lead to its final extinction as a public park. The extension of an unsightly highway into a park was held a perversion of its use in Village of Riverside v. MacLain, 210 Ill. 308, 71 N. E. 408, 66 L. R. A. 288, 102 A. S. R. 164. A street through the center of a park was so held in Price v. City of Plainfield, 40 N. J. L. 608.

If it were held that the proposed taking would not materially injure the park or interfere with its use, respondent could not take the easement in any event without showing public necessity therefor and without showing that it could not reasonably carry on its business and exercise its franchise powers without the taking, which we have held is not shown. Respondent can take no part of this park, whether detrimental to the use of the park or not, unless there is reasonable public necessity therefor.

The trial court found as facts that public necessity required the taking of this easement and that such taking would not materially or substantially interfere with the existing or prior public use of the park and was not inconsistent therewith. We are mindful of the great weight to be given to the findings of the trial court. This court is concerned only with the question whether the evidence reasonably sustains the findings. Here there is no dispute as to the facts. Inferences and conclusions drawn by the trial court from undisputed facts will be sustained if they are such as reasonably may be drawn or inferred from the facts. N. W. F. & M. Ins. Co. v. Connecticut F. Ins. Co. 105 Minn. 483, 117 N. W. 825; G. N. Ry. Co. v. City of Minneapolis, 142 Minn. 308, 172 N. W. 135. Applying

the law, as hereinbefore found, to the undisputed facts, there is no express or implied statutory authority for the proposed taking and no public necessity therefor. When it becomes necessary for public service corporations, counties, towns or municipalities to run railways, highways, or other lines through state parks, general or special legislative authority should be obtained. The legislature will then be in a position to place such restrictions thereon as will properly guard the public interest.

The judgment appealed from is reversed with directions to dismiss the proceeding.