TOWN OF FAYAL, petitioner,
Respondent

v.

CITY OF EVELETH, a municipal
corporation, Appellant.

No. C2–98–875.

Court of Appeals of Minnesota.

Jan. 5, 1999.

Scott C. Neff, Paul D. Cerkvenik, Trenti Law Firm, Virginia, MN (for respondent).

John M. Colosimo, Michelle M. Lore, Colosimo, Patchin, Aronson & Kearney, Ltd., Virginia, MN (for appellant).

Carla J. Heyl, St. Paul, MN (for amicus curiae League of Minnesota Cities).

Troy J. Gilchrist, St. Michael, MN (for amicus curiae Minnesota Association of Townships).

Considered and decided by KLAPHAKE, Presiding Judge, DAVIES, Judge, and AMUNDSON, Judge.

## OPINION

AMUNDSON, Judge.

Fayal Township petitioned for condemnation of the City of Eveleth's water lines, hydrants, and appurtenant easements lying within Fayal's borders to acquire complete ownership of the water system located within Fayal. Eveleth moved to dismiss the petition.

The district court concluded that Fayal had the authority to condemn Eveleth's property under both its general grant of eminent domain power and its express grant to acquire private property by eminent domain proceedings. The court further concluded that Fayal had an implied right to condemn Eveleth's property, reasoning that Fayal's proposed use would not be substantially inconsistent with Eveleth's use of the property. The court later found that the taking was necessary for the public purpose of providing a cost-efficient water supply system for Fayal residents.

·On appeal, Eveleth asserts that (1) Fayal lacks statutory authority to condemn the property of a municipality, because the municipality itself also has the power of eminent domain and the disputed property is already devoted to a public purpose; (2) it is contrary to public policy to allow a township to acquire by condemnation property of a municipality; and (3) even if Fayal had the power to condemn Eveleth's water lines, Fayal's actions were not reasonably necessary to serve a proper public purpose because Fayal already has a water source. Amici curiae briefs were filed in support of both parties. We reverse.

## FACTS

Eveleth originally constructed its water distribution system in the early 1900's, using the water from St. Mary's Lake, which is located in Fayal. Around 1940, Eveleth installed two water lines to serve three properties owned or shared by Eveleth which lie within Fayal's borders. Over the years, individual residents of Fayal contracted with Eveleth to tap into these lines to provide residential water service.

Between 1988 and 1989, Fayal constructed new water lines using either its own funds or Iron Range Resources and Rehabilitation Board (IRRRB) grants. Fayal gave some of these lines to Eveleth in exchange for Eveleth's promise to maintain them and provide fire hydrants and water to Fayal residents. Fayal agreed that future requests for connections by private customers along these lines would be between Eveleth and the private contracting party.

Since 1991, Fayal has disputed Eveleth's water rates, hydrant rental fees, and the adequacy of maintenance and water service. The parties tried various methods to resolve matters. In April 1996, due to an impasse in negotiations, Fayal terminated all of Eveleth's water contracts and stopped paying hydrant rental fees.

In 1997, Fayal arranged to purchase water from the city of Gilbert at a lower bulk rate than it had been paying Eveleth. Fayal then decided to construct two lines linking Fayal-owned water lines to Gilbert's water supply. After constructing the first line, Fayal offered to buy Eveleth's water lines to avoid duplicating the lines in those areas. Eveleth refused to sell. Fayal then completed construction of the second line.

In late November 1997, Fayal disconnected Eveleth's water supply to 150 Fayal customers and started providing service to these customers using Gilbert water. Fayal owns five lines built between 1991 and 1997, and Eveleth owns four lines, two built around 1940 and two built in the late 1980's. The condemnation petition involves Eveleth's four water lines, the 13 fire hydrants along these lines, and appurtenant easements.

## ISSUES

I. Did the district court err in concluding that Fayal had the authority to condemn Eveleth's water lines under either its express grant to take private property or under its general grant of eminent domain authority?

II. Did the district court err in concluding that Fayal had the implied right to condemn public property based on the consistent use doctrine?

## STANDARD OF REVIEW

The judiciary's role in reviewing condemnation determinations is limited. *City of Duluth v. State*, 390 N.W.2d 757, 763 (Minn.1986). In *Housing and Redevelopment Authority v. Minneapolis Metropolitan Co.*, 259 Minn. 1, 15, 104 N.W.2d 864, 874 (1960), the supreme court stated:

> Courts may interfere only when the [condemnor's] actions are * * * taken capriciously, irrationally, and without basis in law or under conditions which do not authorize or permit the exercise of the asserted power. The court is precluded from substituting its own judgment for that of the [public body] as to what may be necessary and proper to carry out the purpose of the plan.

The district court's determination regarding public purpose and necessity are questions of fact that will not be reversed on appeal unless clearly erroneous. *State by Humphrey v. Byers*, 545 N.W.2d 669, 672 (Minn.App. 1996).

## ANALYSIS

### I.

### Use of eminent domain power to acquire public property

"The power of eminent domain inheres in the state as an attribute of sovereignty." *Cooperative Power Ass'n v. Aasand*, 288 N.W.2d 697, 700 (Minn.1980). In fact, it is the sovereign reasserting, temporarily or permanently, its dominion over property for public purpose to advance the public good. It is the ultimate extrapolation of the theoretical construct that property belongs to the people in their sovereign ca-

pacity. The right of the people to resume possession of property whenever the public interest requires it, is limited only by the constitution and laws of the state. An incident of sovereignty, "the time, manner, and occasion of its exercise are wholly in the control and discretion of the legislature, except as restrained by the constitution." *Barmel v. Minneapolis–St. Paul Sanitary Dist.*, 201 Minn. 622, 624, 277 N.W. 208, 209 (1938). However, a government entity to whom the right of eminent domain has been delegated may not, as a general rule, condemn public property or property devoted to a public use unless such authority is expressly or impliedly granted by statute. *In re City of Shakopee*, 295 N.W.2d 495, 498 (Minn. 1980).

Here, the district court found that Eveleth did not own the water lines to serve the general welfare of its own citizens and it was not under a statutory duty to provide water to Fayal's residents. Eveleth could provide water extra-territorially to Fayal only with Fayal's consent, the district court reasoned, and Fayal had revoked that consent when it terminated the contracts. The court then concluded that Eveleth held the water lines in a proprietary capacity, and it was, therefore, private property rather than property devoted to a public use. The court reasoned that Eveleth's property was, thus, subject to condemnation under Fayal's express authority to acquire private property pursuant to Minn.Stat. § 368.01, subd. 27 (1996), or under implied authority pursuant to Minn.Stat. § 365.02 (1996). We disagree.

■ A municipality acts in its proprietary capacity by providing water and electricity to its inhabitants. *City of Staples v. Minnesota Power & Light*, 196 Minn. 303, 305, 265 N.W. 58, 59 (1936). Nevertheless, supplying electricity, even if provided by a quasi-public entity, is a public use. *See City of Shakopee v. Minnesota Valley Elec. Coop.*, 303 N.W.2d 58, 60 (Minn.1981). By extension, supplying water is also a public use, especially since the legislature has expressly empowered a municipality to provide a waterworks systems. *See* Minn.Stat. § 444.075 subd. 1a (1996) (authorizing a municipality to build, construct, reconstruct, repair, enlarge,

improve, or in any other manner obtain waterworks systems).

■ Eveleth's water distribution, even if held in a proprietary capacity, constitutes a public use by a public body. While Fayal's grant of eminent domain under Minn.Stat. § 368.01, subd. 27, clearly permits taking of private property, it is silent regarding authority to take public property. However, the grant of eminent domain power under Minn.Stat. § 365.02 is broader, and not expressly limited to private property. Section 365.02 provides in part that "[a] town may * * * (2) buy, take, and hold real and personal property for a public purpose." But, only a tortured interpretation of this statute indicates legislative intent allowing a town to condemn public property. While it is true that this statute contemplates a broader power, public property may still not be condemned unless certain preconditions are met. The general rule relating to the power of eminent domain over public property is: A government entity to whom the right of eminent domain has been delegated may not condemn public property or property already devoted to public use unless the authority is expressly or impliedly granted by statute. The question then becomes whether an implied intent exists as an exception to the general rule requiring express legislative authority to take public property.

■ Indeed, legislative power to condemn public land under a general grant of eminent domain may be implied when the condemnee has not put its land to public use. *In re City of Shakopee*, 295 N.W.2d at 498. But, when the land is already dedicated by the state or one of its governmental agencies for a specific public use and is actually used for the specified purpose, the rule is that mere general authority to condemn is insufficient to interfere with authorized public uses. *Minnesota Power & Light Co. v. State*, 177 Minn. 343, 345, 225 N.W. 164, 165 (1929).

■ The evidence shows that Eveleth has for years continuously provided water to both Fayal residents and its own properties within Fayal. Therefore, Eveleth's water lines and the related real and personal property has been put to an authorized public use. Conse-

quently, the finding that Eveleth's property was subject to condemnation under Fayal's general grant of eminent domain was erroneous.

## II.

### Implied right to condemn public property based on the consistent use doctrine

■ The district court concluded that Fayal had an implied right to condemn Eveleth's property under its general grant of eminent domain, reasoning that Fayal's proposed use was not substantially inconsistent with Eveleth's use. The court stated that "the condemnation would not destroy the property's existing use, as it would be essentially identical to the property's existing use; i.e., the provision of water to Fayal's residents and fire hydrants." We disagree with the court's conclusion that an implied right of condemnation exists based on the consistent use doctrine.

■ Generally, property already devoted to a public use cannot be condemned for an identical use in another party's hands. In such an instance, the property merely takes new ownership without any new benefit inuring to the public. 1A Phillip Nichols et al., *Nichols on Eminent Domain* § 2.2[9] at 2–96–99 (rev. 3rd ed.1998). The rule against taking property already devoted to a public use, in the absence of express authority, generally does not apply when the second use does not materially or seriously interfere with the first use, or, when the second use is consistent and the two uses may be enjoyed together without interference with the first use. *Minnesota Power & Light,* 177 Minn. at 349–50, 225 N.W. at 166.

■ This implied power may not be invoked when the proposed use of the property would destroy or essentially impair the existing use. *In re City of Shakopee,* 295 N.W.2d at 499–500 (preventing condemnation when proposed road would have reduced useful life of sludge disposal site by one to two years); *Northwestern Tel. Exch. Co. v. Chicago, Milwaukee & St. Paul Ry. Co.,* 76 Minn. 334, 346, 79 N.W. 315, 317 (1899) (preventing condemnation when taking would extinguish or materially injure prior use).

■ Whether the taking will materially interfere with, or is inconsistent with, the prior use is necessarily one of fact. *Minnesota Power & Light,* 177 Minn. at 350, 225 N.W. at 167. A compatible use was found when a municipality planned to open a street that crossed a railroad's right of way, holding the two could coexist. *Minneapolis & St. Louis Ry. v. Village of Hartland,* 85 Minn. 76, 82, 88 N.W. 423, 425 (1901). An attempt by one railroad to condemn the property of another railroad is inconsistent, however, as the public use is identical with the one already enjoyed:

> We think the rule is well established that when property has already been appropriated for public use in the lawful and proper exercise of the power of eminent domain it cannot be taken for another public use which will thereby wholly, or to any great extent in part, defeat the former use, unless the power to make such second appropriation is expressly granted, or arises from necessary implication. * * *
>
> There may be instances where public necessity is of such a nature that one railroad company might be empowered to condemn and appropriate the property of another, but it would require a legislative enactment to authorize such a proceeding. If one railroad company could, at its option, condemn the property of another railroad company, we do not see why such proceedings could not be continued as often as each different company desired. The law of eminent domain does not sanction any such absurdity, especially where the public use sought is identical with the one already enjoyed.

*Minneapolis & St. Louis Ry. Co. v. Minneapolis W. Ry. Co.,* 61 Minn. 502, 508–09, 63 N.W. 1035, 1038 (1895).

■ The consistent use doctrine contemplates coexistence of the prior and proposed uses. Fayal's proposed use is necessarily inconsistent with Eveleth's use because it is identical to the one that Eveleth already enjoys. Fayal's control of the water lines would destroy Eveleth's use.

 We recognize that a municipality may take property of a quasi-public entity and put it to an identical use when a greater public use and benefit would result from purely public ownership or operation. *Minnesota Valley Elec. Coop.*, 303 N.W.2d at 60. In *Minnesota Valley Elec. Coop*, the supreme court upheld a city's condemnation of the electric cooperative's service contracts, property and facilities. *Id.* at 62. The supreme court held that "a city possessing a general power to condemn may acquire the property and service area of an electric cooperative association if a consistent use of the property is intended." *Id.* at 60.

However, *Minnesota Valley Elec. Coop* involved a municipality and a quasi-public entity. Both Fayal and Eveleth are governmental entities with a substantial parity in eminent domain powers. Eveleth has not agreed to a forced sale. As Eveleth's property is already purely governmentally owned and operated, no new benefit inures to the public by simply transferring ownership from one governmental entity to another governmental entity. The court, therefore, erred in concluding that an implied right exists based on the consistent use doctrine.

## Motion to strike

Fayal moved to strike Eveleth's references to "service contracts." In light of our decision, the issue underlying the motion is moot. We, therefore, deny the motion and find it unnecessary to consider Eveleth's remaining claims.

## DECISION

The district court erred in concluding that Fayal has authority to condemn Eveleth's public property as private property under either Minn.Stat. § 368.01, subd. 27, or Minn. Stat. § 365.02. Furthermore, the district court erred in concluding that Fayal had implied authority to take Eveleth's public property based on the ground that Fayal's use would not be substantially inconsistent with Eveleth's use.

**Reversed.**