In the Matter of Condemnation by Petitioner, Williams Pipeline Company, a Delaware corporation, of Certain Lands in the City of New Brighton to Permit Relocation of Pipeline.

**WILLIAMS PIPELINE COMPANY,**
petitioner, Respondent,

v.

**SOO LINE RAILROAD COMPANY,**
et al., Respondents Below (C1–98–2195),

Soo Line Railroad Company,
Respondent (C4–98–2207),

MT Properties, Inc., Appellant (C1–98–2195), Respondent (C4–98–2207),

Sprint Communications Company, L.P., et al., Lower Court Respondents (C4–98–2207),

Minnesota Commercial Railway Company, Appellant (C4–98–2207),

and

State of Minnesota, by MT Properties, Inc., Appellant (C1–98–2195),

v.

Williams Pipeline Company, a Delaware corporation, Respondent (C1–98–2195).

Nos. C1–98–2195, C4–98–2207.

Court of Appeals of Minnesota.

July 27, 1999.

John M. Lefevre Jr. and Bonnie Wilkins, Kennedy & Graven, Minneapolis, for Williams Pipeline Company.

Carolyn V. Wolski, Leonard, Street & Deinard, P.A., Minneapolis, for Soo Line Railroad Company.

Timothy R. Thornton and Paul C. Thissen, Briggs & Morgan, Minneapolis, for MT Properties, Inc.

Sprint Communications Company, L.P., Wilmington, DE, lower court respondent.

Byron D. Olsen and Mark S. Radke, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, for Minnesota Commercial Railway Company.

Mike Hatch, Attorney General; Alan C. Williams and Mehmet K. Konar–Steenberg, Assistant Attorneys General, St. Paul, for amicus curiae State of Minnesota.

Considered and decided by
SCHUMACHER, Presiding Judge,
AMUNDSON, Judge, and SCHULTZ,[*]
Judge.

## OPINION

AMUNDSON, Judge

This appeal arises from two actions. The first is a condemnation action brought by Williams Pipeline Company (Williams) to reroute its pipeline through an existing rail yard.

The second action is a Minnesota Environmental Rights Act (MERA) suit brought by MT Properties, Inc. (MT) on behalf of the State of Minnesota, claiming that the proposed rerouting would likely cause pollution, impairment, or destruction of protectable natural resources. These actions were consolidated before the district court for hearing.

The district court initially denied the condemnation petition, but then reversed itself, holding that it lacked jurisdiction to consider objections to the petition. The court made extensive findings in January 1998 on the potential environmental, health, and safety impact of the proposed rerouting of the pipeline. In October 1998, the district court dismissed the MERA claim, apparently because it concluded that the claim was barred by Minn. Stat. § 116B.03 (1998).

This appeal is taken from the final decision granting condemnation and dismissing the MERA claim. We reverse and remand.

## FACTS

MT owns and manages a rail yard (commonly known as the New Brighton rail yard) in which several railroads operate tracks. Since January 1987, MT has leased track to the Minnesota Commercial Railroad Company (MCR), a public service corporation under Minnesota law and a common carrier under federal law. Over ten years ago, subsurface environmental contamination was discovered on property lying immediately to the east and west of the New Brighton rail yard. As a result of the contamination, the area around the rail yard has been declared a federal Superfund site.

Williams is also a common carrier, and is engaged in the interstate transportation of petroleum products through a network of pipelines. A section of its pipeline runs below ground through the Superfund site. To effectuate the cleanup, the MPCA and the Environmental Protection Agency (EPA) entered into a consent order with Williams. Under the consent order, Williams agreed to remove its pipeline from the Superfund site. Williams agreed to remove the pipeline only after being threatened with cleanup obligations if it continued to resist relocation.

The consent order does not require Williams to construct its pipeline along any particular route. Neither the EPA nor the MPCA can properly exercise jurisdiction under the consent order beyond the Superfund site. Williams may select a route outside the boundaries of the site, without obtaining EPA or MPCA approval under the consent order. Williams could turn off the pipeline to comply with the consent order, and deliver its products through alternative routes. Finally,

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Williams may propose an acceptable reroute within the site, but any rerouting within the Superfund site must be approved by the EPA and MPCA under the consent order.

Williams elected to seek, through condemnation, an easement to construct, maintain, and operate the rerouted pipeline on MT's property. Williams seeks to take, by eminent domain, two noncontiguous tracts of MT's property leased to MCR. The condemnation proceeding significantly affects the rights of both MT and MCR. One tract lies beneath seven railroad tracks at the south end of the yard; the other tract runs longitudinally along railroad tracks at the north end of the yard. The rerouted pipeline would run north, parallel to the railroad tracks, and tie into Williams' existing pipeline on the west side of the tracks.

Under the consent order, the EPA and MPCA will reimburse Williams for moving the pipeline out of the cleanup area. The consent order, however, does not provide for the compensation of MT, MCR, or any other party affected by the rerouting. Moreover, in connection with rerouting of the pipeline, the consent order releases Williams from any liability for contamination at the site, while it affords no similar protection to MT, MCR, or any other party.

Williams' condemnation petition was initially denied by the district court. After Williams moved for a new trial, the district court reversed itself, concluding that it erred by considering MT's objections to the condemnation petition because MT's rights under state law are superseded by federal law under 42 U.S.C. § 9613(h) (1994). The district court concluded that it lacked jurisdiction to entertain MT's objections to the condemnation petition and it granted the petition. The district court also concluded that MT's MERA claim is barred by Minn.Stat. § 116B.03, subd. 1, because it challenges an action taken pursuant to a consent order with the MPCA.

## ISSUES

I. Did the district court err in concluding that it lacked jurisdiction to consider objections to the condemnation petition?

II. Did the district court err when it concluded that it lacked jurisdiction to consider the MERA claim?

III. Should MT's motion to strike be granted?

## ANALYSIS

 The interpretation of statutes is a question of law, which this court reviews de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Here, the issues on appeal focus on the interpretation and application of statutes.

## I. STATE COURT JURISDICTION OVER CONDEMNATION

 The district court granted the condemnation petition because it concluded that it "lacked jurisdiction" to consider objections. That decision was based solely on 42 U.S.C. § 9613(h), which reads:

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title.

The district court interpreted section 9613(h) as a bar to all objections to the condemnation petition in state court, reasoning that opposition to condemnation of the property constitutes "a challenge to a

remedial action selected under Federal Law." The district court found that "MT's entire objection to the condemnation proceeding was that the route selected for the pipeline was improper and in violation of state law."

On its face, section 9613(h) limits the power of the federal courts to entertain certain challenges and review certain orders. The statute does not affect state court jurisdiction over state law claims. *See United States v. Colorado*, 990 F.2d 1565, 1579 (10th Cir.1993) (section 9613(h) bars federal courts from exercising jurisdiction, but not state courts); *see also Redland Soccer Club, Inc. v. Department of the Army*, 548 Pa. 178, 696 A.2d 137 (Pa.1997) (involving medical monitoring device claims in state court following dismissal by federal court under section 9613(h)). As further evidence of the preservation of state claims and jurisdiction, the statute carves out and preserves the jurisdiction of federal courts "under section 1332 of title 28 (relating to diversity of citizenship jurisdiction)" to hear claims arising under state law. The condemnation petition by Williams and MT's objections to that petition arise under state law. The district court erred when it concluded that MT's objections in state court are barred by section 9613(h).

 We conclude that the district court erred in holding that it lacked jurisdiction, and we also conclude that it erred, as a matter of law, in granting the condemnation petition. Because an authorized public use exists on the property Williams seeks to acquire, and the proposed use of the property is inconsistent with the existing public use, Minnesota law mandates denial of the petition.

 "The power of eminent domain inheres in the state as an attribute of sovereignty." *Cooperative Power Ass'n v. Aasand*, 288 N.W.2d 697, 700 (Minn.1980). A government entity delegated the right of eminent domain may not, as a general rule, condemn public property or property already devoted to a public use unless such

authority is expressly or impliedly granted by statute. *In re City of Shakopee*, 295 N.W.2d 495, 498 (Minn.1980). When the land is already dedicated by the state or one of its governmental agencies for a specific public use and is actually used for the specified purpose, the rule is that mere general authority to condemn is insufficient to interfere with already authorized public use. *Minnesota Power & Light Co. v. State*, 177 Minn. 343, 345, 225 N.W. 164, 165 (1929); *see also Northwestern Tel. Exch. Co. v. Chicago, Milwaukee & St. Paul Ry.*, 76 Minn. 334, 347, 79 N.W. 315, 318 (1899) (preventing condemnation when taking would extinguish or materially interfere with prior use).

Appellants argue that under Minn.Stat. § 117.48 (1998), Williams has no authority to condemn the property because it is already devoted to a public purpose.

**117.48 Crude oil pipeline companies, eminent domain.**

The business of transporting crude petroleum, oil, their related products and derivatives including liquefied hydrocarbons, or natural gas by pipeline as a common carrier, is declared to be in the public interest and necessary to the public welfare, and the taking of private property therefor is declared to be for a public use and purpose. Any corporation or association qualified to do business in the state of Minnesota engaged in or preparing to engage in the business of transporting crude petroleum, oil, their related products and derivatives including liquefied hydrocarbons, or natural gas by pipeline as a common carrier, is authorized to acquire, for the purpose of such business, easements or rights-of-way, over, through, under or across any lands, **not owned by the state or devoted to a public purpose** [for the construction of a pipeline.]

Minn.Stat. § 117.48 (emphasis added).

Williams argues that it is not prohibited from condemning an existing public use if the proposed use is not substantially incon-

sistent with the existing use. *See Minnesota Power*, 177 Minn. at 350, 225 N.W. at 166 (implying a right to condemn when the proposed use is not substantially inconsistent with the existing use). But the district court made extensive findings that the proposed location of the pipeline *is* inconsistent with the current use of the property by the railroad.

This court has held that one entity with eminent domain authority may not exercise that right over another entity with eminent domain authority of equal necessity. *See Town of Fayal v. City of Eveleth*, 587 N.W.2d 524, 529–30 (Minn.App.1999) (holding that one municipality cannot condemn the water lines of another municipality because both uses were inconsistent), *review denied* (Minn. Mar. 16, 1999); *see also Minneapolis & St. Louis Ry. v. Minneapolis W. Ry.*, 61 Minn. 502, 509, 63 N.W. 1035, 1038 (1895) (holding that one railroad could not exercise its eminent domain power over another because result—that each could exercise power over the other—would be absurd).

Williams cites *Minneapolis & St. Louis R.R. v. Village of Hartland*, 85 Minn. 76, 88 N.W. 423 (1901), but the case is inapposite. In that case, the court held that a village was entitled to condemn a portion of a railroad right of way and depot grounds to construct a street. *Id.* at 80, 88 N.W. at 424. The case involved *government* condemnation of private property serving a public purpose. In this case, there are two *private* entities, each with eminent domain power. Under Minnesota law, Williams cannot exercise that power to establish an inconsistent use on property already serving a public purpose.

Other jurisdictions have adopted statutes recognizing the doctrine of "higher use" or "more necessary" public use, which permits a subsequent taking to establish a more necessary public use than that to which the property is currently devoted. *See Freeman Gulch Mining Co. v. Kennecott Copper Corp.*, 119 F.2d 16, 20 (10th Cir.1941) (noting Utah's "more necessary" doctrine); *Mesa v. Salt River Project Agric. Improvement & Power Dist.*, 92 Ariz. 91, 373 P.2d 722, 731 (Ariz.1962) (discussing the states' codification of the "more necessary" doctrine); *Montana Talc Co. v. Cyprus Mines Corp.*, 229 Mont. 491, 748 P.2d 444, 451 (Mont.1987) (delineating factors under Montana statute for determining whether proposed public use is more necessary). The doctrine is inapplicable if the proposed use is consistent with the existing public use. *Freeman*, 119 F.2d at 20. But the doctrine is useful in situations such as this, where the private entities' proposed and existing uses are inconsistent. It is not our function to adopt the doctrine, but we commend its utility to the attention of the legislature.

## II. MT'S MERA ACTION

■ The district court initially concluded that MT was entitled to prevail on its MERA claim, and the court permanently enjoined Williams' proposed route. The court made findings that the construction of the pipeline along the proposed route would certainly cause shifting, mixing, spreading, and dispersion of the existing contamination. The district court concluded that the rerouting constituted "pollution, impairment, or destruction" of the environment, violating MERA. In its subsequent order, the district court determined that the MERA action could not be maintained because the rerouting was proceeding under the imprimatur of an MPCA consent order, but it did not repudiate the findings of fact on potential harm.

Minn.Stat. § 116B.03 provides that:

[N]o action shall be allowable under this section for conduct taken by a person pursuant to any environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit issued by the pollution control agency.

But the consent order did not require this particular rerouting of the pipeline and nothing in the record establishes that the MPCA has authorized the specific harm

that the district court found is likely to result from this choice by Williams.

Because the consent order allows Williams to choose among several alternatives, its decision to seek this particular easement and rerouting does not constitute an action taken "pursuant to" an order or stipulation of the MPCA, and section 116B.03 is inapplicable.

Appellants are concerned that the rerouted pipeline could prove hazardous to the environment because it carries toxic materials that would be dangerous if leaked into the surrounding soil and groundwater. They assert that the likelihood that a train may derail and rupture the underlying pipe is enhanced because the pipeline will now be closer to the tracks than is acceptable under railroad industry standards. Both the consent order and the work plan to which Williams agreed require that any rerouting be consistent with standards promulgated by the American Railway Engineering Association (AREA). The district court made a specific finding that there is no evidence that the proposed reroute will comply with AREA standards. The proposed rerouting is not mandated by the consent order and is inconsistent with the district court's initial findings.

MT also alleges that rerouting the pipeline before the cleanup is accomplished will cause additional "pollution, impairment, or destruction" because existing contaminants may flow into the area being excavated for the rerouted pipeline, polluting additional resources and endangering workers. MERA is intended to protect a wide variety of resources from a range of potential harms. *State by Drabik v. Martz*, 451 N.W.2d 893 (Minn.App.1990). Natural resources are defined in MERA:

Natural resources shall include, but not be limited to, all mineral, animal, botanical, air, water, land, timber, soil, quietude, recreational, and historical resources * * *.

Minn.Stat. § 116B.02, subd. 4 (1998).

■ The proposed use of the easement sought by Williams may fall under the MERA definition of "pollution, impairment, or destruction," which includes

[a]ny conduct which materially adversely affects or is likely to materially adversely affect the environment.

*White v. Minnesota Dept. of Natural Resources*, 567 N.W.2d 724, 737–38 (Minn. App.1997), *review denied* (Minn. Oct. 31, 1997) (explaining factors of prime facie case under MERA). The acquisition of property by a condemning authority is subject to the requirements of the MERA. *County of Freeborn by Tuveson v. Bryson*, 309 Minn. 178, 180, 243 N.W.2d 316, 317 (1976). The district court erred in dismissing the MERA claim for lack of jurisdiction.

Respondents argue that appellants failed to establish a prima facie case under MERA, claiming there is no unique protectable natural resource in the area and that polluted land cannot be a protectable area under the law. The decision from which this appeal is taken did not address the sufficiency of the MERA claim and we decline to do so for the first time on appeal. *Thiele v. Stich*, 425 N.W.2d 580, 582, (Minn.1988). From our review of the record, the dismissal appears to be based on the court's conclusion that it lacked jurisdiction to hear any objections to Williams' rerouting of the pipeline under the consent order, and not because it concluded that the January 1998 findings of potential harm were erroneous. Those findings are replete with concern for the environment and they detail a litany of potential disasters if the proposed rerouting is permitted, including contaminated groundwater radiating from the site in all directions. We remand for consideration of the MERA claim without expressing an opinion on the merits.

### III. MOTION TO STRIKE

■ MT moved to strike the addendum to Williams' brief, and MPCA's appendix. Appellate review is limited to the

record. *Fredrich v. Independent Sch. Dist. No. 720*, 465 N.W.2d 692, 694 (Minn. App.1991). It is well recognized that the appellate record consists of "[t]he papers filed in the [lower tribunal], the exhibits, and the transcript of the proceedings * * *." Minn. R. Civ.App. P. 110.01; *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn.1977). Some of the documents that MT moves to strike do not appear to be part of the record we received from the district court.

The state argues that this court should allow public documents not contained in the record to be submitted by amicus curiae, citing *Blue Earth County Pork Producers, Inc. v. County of Blue Earth*, 558 N.W.2d 25, 30 (Minn.App.1997), *review denied* (Minn. Mar. 26, 1997). We are not persuaded that the documents at issue are intended to inform this court as to facts or situations that would otherwise escape consideration or to remind us of legal matters that may escape notice. *See id.* Because we have not relied on any of these documents in support of our holding, we decline to grant the motion to strike.

## DECISION

The district court erred in concluding that it lacked jurisdiction over appellants' opposition to the condemnation petition and in granting the petition, thereby authorizing the establishment of an inconsistent use on property already devoted to a public use. The district court also erred in concluding that the MERA claim is precluded by Minn.Stat. § 116B.03. We reverse the grant of the condemnation petition and remand for consideration of the MERA claim.

**Reversed and remanded.**