BRATVOLD, Judge (dissenting)
I respectfully dissent. Based on the plain language of Minn. Stat. § 116B.03 (2018), the "no-action" provision in the Minnesota Environmental Rights Act (MERA) does not bar a citizen suit against a state agency that has violated Minnesota law by its own conduct and has materially adversely affected the environment, here, White Bear Lake (lake) and the Prairie du Chien-Jordan Aquifer (aquifer). Also, the public-trust doctrine protects navigable waters, including White Bear Lake and its lake bed, therefore, respondents' common-law claim is authorized. Because the legal basis for respondents' claims is valid, I consider other issues raised by appellants. After doing so, I find no basis for reversal or a new trial and would affirm the district court's decision.
MERA's no-action provision
While the no-action provision in Minn. Stat. § 116B.03, subd. 1, allows no action in a citizen suit against an agency "for conduct" taken by the agency "pursuant to any ... permit issued by" the Minnesota Department of Natural Resources (DNR), I agree with the district court that respondents' suit was not for a municipality's or the DNR's conduct pursuant to a permit. Rather, respondents' suit was for the DNR's conduct (including its failure to act) pursuant to its statutory authority. To explain my reasoning, I will begin with the statutory framework under chapter 116B, then consider the language of the no-action provision and the conduct challenged by respondent's lawsuit, and, finally, address whether an action under section 116B.10 is the exclusive remedy when a MERA claim relates to permits issued by an agency.
A. Statutory framework: Chapter 116B declares environmental rights and has 13 separate sections. The legislature expressly declared MERA's purpose in three steps: first, each person "is entitled by right" to the protection of air, water, land and other natural resources; second, each person "has the responsibility to contribute to the protection, preservation, and enhancement" of these natural resources; and third, it is in the "public interest to provide an adequate civil remedy" to protect natural resources "from pollution, impairment, or destruction." Minn. Stat. § 116B.01 (2018).
After providing some detailed definitions in section 116B.02, MERA authorized two different civil actions. In section 116B.03, MERA created a civil action "in the name *369 of the state of Minnesota" by "any person" and against "any person" for the protection of natural resources from "pollution, impairment, or destruction." Minn. Stat. § 116B.03, subd. 1. For ease of reference, I will call this a "03 civil action." In section 116B.10, MERA created a civil action "against the state or any agency or instrumentality thereof" with a different focus, specifically, "where the nature of the action is a challenge to an environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit ... for which the applicable statutory appeal period has elapsed." Minn. Stat. § 116B.10, subd. 1 (2018). For ease of reference, I will call this a "10 civil action."
For both types of civil actions, the legislature set out the plaintiff's burden of proof. For a 03 civil action, the plaintiff's burden of proof depends on the challenged conduct, which it describes as (a) and (b). Under (a), when "the subject of the action is conduct governed by any environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit," a prima facie showing is that the defendant's conduct "violates or is likely to violate," for example, a permit. Minn. Stat. § 116B.04(a) (2018). Under (b), if the 03 civil action is not about conduct governed by, for example, a permit, then a prima facie showing is that the defendant's conduct "has, or is likely to cause the pollution, impairment, or destruction of" natural resources. Id . (b) (2018). The plaintiff's burden of proof for a 03 civil action thus includes proving either that the defendant's conduct violates, for example, a permit, or that defendant's conduct has caused pollution, impairment or destruction of natural resources.
In contrast, for a 10 civil action, the plaintiff's burden of proof is not described as conduct, but instead as proving that the "environmental quality standard, limitation, rule, order, license, stipulation agreement, or permit is inadequate to protect" natural resources from pollution, impairment, or destruction. Minn. Stat. § 116B.10, subd. 2 (2018). And the plaintiff's burden of proof under a 10 civil action is satisfied by proving the inadequacy of a permit to protect natural resources from pollution, impairment, or destruction.
B. No-action provision and the challenged conduct: This statutory framework carries significant meaning when determining whether the no-action provision in a 03 civil action precludes all relief in a suit against the DNR for conduct by a municipality pursuant to a permit. In relevant part, a 03 civil action has an important exception that is not present in a 10 civil action.
[P]rovided, however, ... no action shall be allowable under this section for conduct taken by a person pursuant to any environmental quality standard, limitation, rule, order, license, stipulation agreement or permit issued by the Pollution Control Agency, Department of Natural Resources , Department of Health or Department of Agriculture.
Minn. Stat. § 116B.03, subd. 1 (emphasis added).
Based on the plain-language of the no-action provision, I conclude that it does not apply here because respondents' action is "for conduct" taken (or not taken) by the DNR pursuant to its statutory authority and does not challenge a municipality's conduct pursuant to a permit. The no-action provision directly refers to a lawsuit's allegations of wrongful conduct when it states that "no action" is allowable "for conduct." Respondents' MERA claim fits section 116B.04(b) 's prima facie showing for a 03 action because it claims that the DNR's conduct (or lack thereof) has impaired the lake and aquifer, which are both natural resources. See *370 Minn. Stat. § 116B.02, subd. 4 (2018). In contrast, respondents' MERA claim does not fit section 116B.10, subdivision 2 's prima facie showing for a 10 civil action because it does not contend that a groundwater-appropriation permit is "inadequate to protect" natural resources. Instead, respondents' MERA claim challenges the DNR's failure to comply with state laws that mandate that it protect our surface and groundwater. I disagree that, because respondents' complaint alleges a MERA violation relating to conduct by a municipality pursuant to a permit issued by the DNR, the no-action provision bars a 03 civil action against the DNR.
It is not accurate to describe the "complained-of conduct" in respondents' lawsuit as "the withdrawal of groundwater in conformity with or under the authority of the DNR's permits." Respondents do not contend that any municipality's conduct violated state law or a DNR-issued groundwater-appropriation permit. Indeed, respondents did not maintain an action against any municipality, respondents did not seek to enjoin any municipality, and the district court's order did not enjoin any person other than the DNR. And neither the respondents' evidence nor the district court's findings criticize the issuance of any particular groundwater appropriation permit. Instead, the district court found that the DNR issued "evergreen"[1] groundwater-appropriation permits on a case-by-case basis for decades without considering the cumulative and adverse effect of those permits on the lake and aquifer and without following other statutory mandates.
It also is not accurate to state that the DNR "has only one tool for regulating water appropriation-permits." Indeed, the district court found that the DNR violated Minnesota law by failing to comply with its statutory duties to protect Minnesota's surface and groundwater. The district court issued findings of fact supporting its determination that the DNR either directly or by omission violated multiple Minnesota statutes, and this portion of its opinion extends more than 15 pages. In its conclusions of law, the district court included a detailed analysis of the facts and applicable law, and determined that the DNR violated and "will likely violate" the following statutes and rules: (a) Minn. Stat. § 103G.211 (2018), by allowing public waters to be drained without replacement; (b) Minn. Stat. § 103G.287, subd. 5 (2018), by issuing groundwater-appropriation permits without a determination of sustainability; (c) Minn. Stat. § 103G.287, subd. 2 (2018), and Minn. Stat. § 103G.285, subds. 3, 6 (2018), by failing to set collective annual withdrawal limits for the lake, require permittees to submit a contingency plan, and specify how it will enforce the protected elevation level of the lake; and (d) Minn. R. 6115.0670, subp. 3(C) (2017), by issuing groundwater-appropriation permits without sufficient hydrologic data. In addition, the district court made specific findings that the DNR's conduct has materially and adversely affected the lake and aquifer.
The district court also found that the DNR had early and ample knowledge of impairment to the lake and aquifer, yet failed to exercise its statutory authority to protect these natural resources. Minnesota law authorizes the commissioner of natural resources (commissioner) to "issue water-use permits for appropriation from groundwater only if the commissioner determines that the groundwater use is sustainable to supply the needs of future generations *371 and the proposed use will not harm ecosystems, degrade water, or reduce water levels beyond the reach of public water supply." Minn. Stat. § 103G.287, subd. 5 (emphasis added).[2] The district court found that the DNR violated this and other provisions, by, among other things, failing to exercise its authority to amend the permits with conditions, see Minn. Stat. § 103G.255 (2018), and failing to set a "protective elevation for the water basin, below which an appropriation is not allowed." Minn. Stat. § 103G.285, subd. 3(b) (requiring designation of protective elevations); see Minn. Stat. § 103G.287, subd. 2 (requiring certain steps when groundwater appropriations "will have negative impacts to surface waters").[3]
Because the respondents' claim is against the DNR for its own conduct that impaired the lake and aquifer and that violated the DNR's affirmative statutory duties, the no-action provision does not apply.
C. Exclusivity of a 10 action and effect of the no-action provision: Even assuming that respondents' claims relate to conduct by a municipality pursuant to a DNR permit and state a 10 civil action, I do not agree that a 10 civil action "is the exclusive remedy available under MERA when the challenged action is that of a state agency in issuing a permit." No language in chapter 116B provides that a 10 civil action is exclusive and cannot be pursued in addition or in the alternative to a 03 civil action. In fact, a 10 civil action expressly carves out a specific niche for a citizen suit against (a) the state or an agency (not another type of defendant, as allowed in a 03 action), (b) where the claim is that, for example, a permit is inadequate to protect natural resources, and (c) "the applicable statutory appeal period has elapsed." Minn. Stat. § 116B.10, subd. 1.[4] As discussed above, a 03 civil action has a broader focus because it challenges a defendant's conduct that impairs natural resources. Minn. Stat. § 116B.04(b). Thus, the statutory framework in chapter 116B allows for a variety of theories and, in the *372 absence of statutory language providing that a 10 civil action is exclusive, these theories may be pursued together or in the alternative.
Additionally, MERA's no-action provision does not completely bar a citizen suit under section 116B.03. For two reasons, I conclude that, when applicable, MERA's no-action provision limits the issues and does not entirely preclude a 03 civil action. First, we must read sections 116B.03 and 116B.04 together and give effect to both provisions, which are explicitly linked. See Martin v. Dicklich , 823 N.W.2d 336, 345 (Minn. 2012) (providing that a statute should be interpreted to give effect to all of its provisions). Section 116B.04(a), which sets out the burden of proof for the first type of 03 civil action, states that a 03 civil action is proven when "the subject of the action is conduct governed by" a permit. Minn. Stat. § 116B.04(a). The no-action provision uses similar language, and states that "no action shall be allowable under this section for conduct taken by a person pursuant to any" permit issued by the DNR. Minn. Stat. § 116B.03, subd. 1. Reading these two provisions together, at the very least, a 03 civil action allows a MERA plaintiff to contend that a defendant's conduct violates or is likely to violate a permit, as expressly stated in section 116B.04. See Minn. Stat. § 116B.04.
Second, relevant case law holds that the no-action provision limits the issues and does not entirely preclude a 03 civil action when the plaintiff's burden of proof is set out in section 116B.04(b), which is the second type of 03 civil action for conduct that has impaired a natural resource. Our court has previously considered the application of the no-action provision to a consent order between a MERA defendant and the Minnesota Pollution Control Agency (MPCA) and we reversed a district court's decision that the no-action provision barred a 03 civil action. In re Williams Pipeline Co . reasoned that the consent order did not require "this particular rerouting of the [defendant's] pipeline" and the consent order allowed the defendant to "choose among several alternatives," therefore, the 03 civil action was not barred. 597 N.W.2d 340, 345-46 (Minn. App. 1999). The Eighth Circuit Court of Appeals reached a similar conclusion and upheld a 03 civil action under MERA even though the defendant had entered into a consent order with the MPCA. Kennedy Bldg. Assocs. v. Viacom, Inc ., 375 F.3d 731, 744-45 (8th Cir. 2004). The Eighth Circuit held that where a consent order "specifies general but not particular actions," the no-action provision "does not preempt a MERA claim based on aspects of the defendant's actions that were not required by the consent order." Id . at 744.
Consistent with the decisions in Williams Pipeline and Kennedy Building , a 03 civil action may proceed so long as a MERA plaintiff bases its claim "on aspects of the defendant's actions that were not required" by the permit. In this case, respondents specifically claimed that the DNR violated other statutory duties, did not assert that the DNR permits were illegal, and contended that the municipalities were appropriating groundwater in compliance with DNR-issued permits. Thus, even assuming the no-action provision applies, respondents' lawsuit is not barred.
In conclusion, based on the plain language of section 116B.03, subdivision 1, and the specific conduct challenged by respondents' lawsuit, the district court correctly decided that MERA's no-action provision does not preclude respondents' 03 civil action for declaratory and injunctive relief on behalf of the state of Minnesota and against the DNR for its own conduct, which has impaired the lake and aquifer.
*373 Alternative remedies under MERA and exhaustion of administrative remedies
To support application of MERA's no-action provision to bar respondents' 03 civil action, appellants contend that respondents' claims are more appropriately brought under Minn. Stat. § 116B.10. For two reasons, I disagree.
First, respondents' suit challenges the DNR's violations of state law and I can find no language in section 116B.10 that would provide relief for agency conduct that violates state law. See Minn. Stat. 116B.10, subds. 1, 2, 3. Indeed, a district court's role in a 10 civil action is very limited. After a prima facie showing by a plaintiff in a 10 civil action, a district court is directed to remit the parties to the state agency that promulgated, for example, a challenged permit, and require the agency to institute appropriate administrative proceedings. Id ., subd. 3. The court retains jurisdiction "for purposes of judicial review to determine whether the order of the agency is supported by the preponderance of the evidence." Id . In contrast, a district court is authorized to grant broad relief in a 03 civil action, including declaratory and equitable relief, as well as to impose conditions on the parties to protect natural resources. See Minn. Stat. § 116B.07 (2018). Respondents' claims for the DNR's violations of state law cannot be addressed in a 10 civil action.
Second, in State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cty Bd. of Cty. Comm'rs , this court rejected a similar argument that a 10 civil action was a MERA plaintiff's sole basis for relief. 771 N.W.2d 529, 537-38 (Minn. App. 2009). After reading together the civil action alternatives set out in MERA, we held that "these sections [116B.03 and .10] clearly provide two distinct ways for a party to challenge an agency's conduct. To construe section 116B.10 as overriding or usurping the plain language of sections 116B.02 and 116B.03 would be unreasonable." Id . at 538. Thus, I disagree that respondents' claim is more appropriately brought under 116B.10.
Appellants also contend that respondents were required to exhaust administrative remedies. The legislature anticipated the appellants' argument that citizens should first be required to pursue administrative relief and made clear that MERA gives them additional rights, separate from other rights and remedies: "No existing civil or criminal remedy for any wrongful action shall be excluded or impaired by sections 116B.01 to 116B.13. The rights and remedies provided herein shall be in addition to any administrative, regulatory, statutory, or common law rights and remedies now or hereafter available." Minn. Stat. § 116B.12 (2018) ; see also State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cty Bd. of Cty. Comm'rs , 711 N.W.2d 522, 525-26 (Minn. App. 2006) (rejecting appellant's argument that respondent failed to exhaust administrative remedies and holding that the district court had subject matter jurisdiction over respondent's MERA claim "regardless of the administrative processes and remedies available" under other provisions), review denied (Minn. June 20, 2006). Accordingly, exhaustion of administrative processes is not required before bringing a claim under MERA.
Agency deference and separation of powers
Appellants make a number of arguments about agency deference and separation of powers. In a 03 civil action, the district court does not review any agency decision and accord it deference; it sits as the finder of fact. This principle is solidly established by precedent that is more than 40 years old. In *374 Minn. Pub. Interest Research Grp. v. White Bear Rod & Gun Club , the Minnesota Supreme Court noted that, when deciding a 03 civil action, "the trial court sat as a court of first impression and not as an appellate tribunal." 257 N.W.2d 762, 782 n.13 (Minn. 1977). In the same case, the supreme court observed that MERA "does not prescribe elaborate standards to guide trial courts, but allows a case-by-case determination by use of a balancing test, analogous to the one traditionally employed by courts of equity, where the utility of a defendant's conduct which interferes with and invades natural resources is weighed against the gravity of harm resulting from such an interference or invasion." Id . at 782. Thus, appellants have no basis for claiming error on the grounds of agency deference.
Similarly, the district court's decision does not overstep the bounds created by the separation of powers for two reasons. First, respondents brought this suit to compel agency compliance with statutes enacted by the legislature. Respondents' request for relief is consistent with MERA's purpose, which the supreme court has described as promoting citizen action: "The need for citizen vigilance exists whether or not specific environmental legislation applies, and MERA is clearly a proper mechanism to force an administrative agency ... to consider environmental values that it might have overlooked." People for Envtl. Enlightenment & Responsibility (PEER), Inc. v. Minn. Envtl. Quality Council , 266 N.W.2d 858, 866 (Minn. 1978).
Second, as stated, MERA authorizes the district court to provide broad relief: "The court may grant declaratory relief, temporary and permanent equitable relief, or may impose such conditions upon a party as are necessary or appropriate to protect the air, water, land or other natural resources located within the state from pollution, impairment, or destruction." Minn. Stat. § 116B.07. The district court's order is well within its statutory authority to force the DNR to act to prevent the impairment of the lake and aquifer.
The central feature of the district court's order provides that the DNR not issue new groundwater appropriation permits "until it has fully complied" with applicable statutes and "has sufficient hydrologic data to understand the impact" on the lake and aquifer. The order also provides that the DNR must comply with applicable statutory requirements for all groundwater appropriation permits within a 5-mile radius of the lake, which includes the DNR (1) setting a collective-annual-withdrawal limit for the aquifer, (2) enforcing a trigger elevation of 923.5 feet for the implementation of protected elevation, (3) preparing and enacting a residential irrigation ban, (4) requiring an enforceable plan to decrease per capita residential water use, and (5) amending all permits within the 5-mile radius of the lake to require a contingency plan for conversion to total or partial supply from surface-water sources.
Each of these provisions in the district court's order is grounded in statutes governing the DNR's duty to manage surface and ground water and are supported by the record and the district court's findings. Therefore, I conclude that the district court's decision appropriately balances the utility of agency conduct with the gravity of the harm to prescribe appropriate relief and does not offend agency deference or separation of powers.
Public-trust doctrine
The public-trust doctrine is described as the state's holding in trust " 'navigable waters and the soil under them for [the] common use,' " along with the state's authority and duty as trustee to maintain and protect navigable waters, for navigation, boating, swimming, and other public uses.
*375 Save Mille Lacs Sportsfishing, Inc. v. Minn. Dep't of Nat. Res. , 859 N.W.2d 845, 849 (Minn. App. 2015) (quoting State v. Longyear Holding Co. , 224 Minn. 451, 29 N.W.2d 657, 669-70 (1947) ); see Nelson v. De Long , 213 Minn. 425, 7 N.W.2d 342, 346 (1942). Respondents' MERA claim does not subsume its claim under the public-trust doctrine because the legislature expressly stated in section 116B.12 that MERA is an additional right and remedy. See Minn. Stat. § 116B.12.
While no Minnesota case has addressed whether the public-trust doctrine includes a duty to manage groundwater-appropriation permits, such a particular holding is not required to recognize the validity of respondents' claim, which seeks to protect the lake, a body of water that the parties agree is navigable. Indeed, courts in other jurisdictions have held that the public-trust doctrine applies to the extraction of groundwater that adversely impacts a navigable waterway. See Envtl. Law Found. v. State Water Res. Control Bd. , 26 Cal.App.5th 844, 237 Cal.Rptr.3d 393, 402 (2018) ("[T]he [trial] court does not hold the public trust doctrine applies to groundwater itself. Rather, the public trust doctrine applies if extraction of groundwater adversely impacts a navigable waterway to which the public trust doctrine does apply."), review denied (Nov. 28, 2018); see also N.D. State Water Comm'n v. Bd. of Managers , 332 N.W.2d 254, 258 n.5 (N.D. 1983) (holding that "protecting the integrity of the waters of the state is ... part of the state's affirmative duty under the 'public trust' doctrine," and the state "not only has the authority to control drainage of a lake, but also has the authority ... to restore a lake to its natural water level"). This caselaw is persuasive.
In seeking relief under the public-trust doctrine, respondents' claim and the relief ordered by the district court necessarily affects the aquifer that the parties agree is "hydraulically connected" to the lake. Caselaw in Minnesota provides that groundwater is part of the public domain and that private property owners also have some interest in the groundwater. See Domtar Inc. v. Niagara Fire Ins. Co. , 563 N.W.2d 724, 734 (Minn. 1997) ; Erickson v. Crookston Waterworks Power & Light Co. , 105 Minn. 182, 117 N.W. 435, 440 (1908). No legal authority holds, and I am not persuaded to conclude for the first time, that a private interest in groundwater negates or bars a public-trust claim to protect navigable water.
The record does not distinguish between the groundwater that lies below the lake and the groundwater that is extracted "outside of the boundaries of the lake and lake bed." As discussed below, the district court's findings of fact should be affirmed under the applicable standard of review. These findings include that the groundwater permits allow for extraction from wells located outside the boundaries of the lake, and also that the groundwater lies beneath the lake, is continuous, and extends far beyond the lakeshore. The district court also found the lake and the aquifer are "strongly hydraulically connected," and the district court specifically found that pumping from wells within five miles of the lake has a "very significant influence" on the lake's levels.[5]
Thus, respondents are entitled to relief under the public-trust doctrine to protect the lake.
*376 Joinder
Appellants contend that the district court erred by failing to dismiss respondents' claims for failure to join the permit-holder municipalities as necessary parties. A party is necessary if complete relief cannot be granted in its absence or it claims an interest in the subject of the litigation. Minn. R. Civ. P. 19.01. A district court's decision to deny a motion to dismiss for failure to join an indispensable party is reviewed for abuse of discretion. Rilley v. MoneyMutual, LLC , 863 N.W.2d 789, 796 (Minn. App. 2015), aff'd , 884 N.W.2d 321 (Minn. 2016). Here, the district court denied the DNR's motion to dismiss because (a) the proper solution, if the parties are necessary, is joinder, not dismissal; (b) a permittee does not have an established right of groundwater use or appropriation; and (c) the relief sought by respondents is premised on the DNR's alleged violations of MERA, not the municipalities' conduct.
The record supports the district court's findings that adequate notice of respondents' action was provided to ten permit-holder municipalities, only two asked to intervene, and both requests were granted. While appellants criticize the notice given, the record does not disclose a request for additional notice to be given, as provided for in MERA. See Minn. Stat. § 116B.03, subd. 2 (authorizing a district court to order additional notice to interested persons). Additionally, the district court's order requires the DNR to review and amend permits within a 5-mile radius consistent with statutory provisions. Presumably, the DNR will follow the appropriate administrative process to do so and will provide all permit-holders with an opportunity to be heard.[6]
More fundamentally, the district court concluded that respondents' failure to join the permit-holder municipalities did not require dismissal and, at most, only affected the relief obtained. I am persuaded by the Minnesota Supreme Court's reasoning in Cruz-Guzman v. State , where the parents of children enrolled in public schools brought a putative class-action complaint against the state alleging a violation of Minnesota's constitutional provision for an adequate education, among other claims. 916 N.W.2d 1, 4 (Minn. 2018). There, the plaintiff-parents had failed to join school districts and charter schools, which the state argued were necessary parties. Id . at 13-14. The supreme court rejected the state's argument because "the relief appellants are seeking from the State does not require the joinder of school districts and charter schools." Id . at 14. Similarly, respondents seek relief from the DNR, not from the municipal permit-holders. Thus, the district court did not abuse its discretion in denying the DNR's motion to dismiss.
District court's findings of fact
Appellants contend that a number of the district court's factual findings were clearly erroneous. "In an appeal from a bench trial, we do not reconcile conflicting evidence."
*377 Porch v. Gen. Motors Acceptance Corp. , 642 N.W.2d 473, 477 (Minn. App. 2002), review denied (Minn. June 26, 2002). We give the district court's factual findings great deference and do not set them aside unless they are clearly erroneous and we are "left with the definite and firm conviction that a mistake has been made." White Bear Rod & Gun Club , 257 N.W.2d at 782-83. While appellants offered evidence in support of their positions and it is understandable that they do not agree with the district court's findings, those findings have support in the record and are not clearly erroneous.
For the reasons stated, I respectfully dissent and would affirm the district court's decision.

Evergreen permits have no expiration date. For example, the district court found that the City of White Bear Lake's permit was issued in 1969 and the expiration date is listed as "long-term appropriation."

Appellants contend that chapter 103G does not apply to groundwater permits that were issued before the legislation was adopted in 1990. This position is not supported by the language of the chapter, which says, for example, that "[g]roundwater appropriations that will have negative impacts to surface waters are subject to applicable provisions in section 103G.285." Minn. Stat. § 103G.287, subd. 2. Moreover, Minn. R. 6115.0750, subp. 7, states that "[a]ll [water appropriation] permits issued by the commissioner since 1949 are subject to the provisions of Minnesota Statutes, section 103G.315, subdivision 11." Minn. R. 6115.0750, subp. 7 (2017). Section 103G.315, subdivision 11, in turn, provides that water appropriation permits are subject to "applicable law existing before or after the issuance of the permit," unless the law says otherwise. Minn. Stat. § 103G.315, subd. 11(a)(3) (2018).

The district court found that, in late 2016, the DNR set a protected elevation of 922 feet for the lake. But the district court also found that "[w]ere it not for this lawsuit, DNR would not have set a protected elevation" for the lake, the DNR "has no plans to enforce the protected elevation, and should [the lake] fall to 922 feet, 'nothing will happen.' "

The majority expresses concern that, if a 03 civil action is available in addition to a 10 civil action, "then the multitude of certiorari appeals ... will never be final so long as there is a person ... who can state a colorable claim ... that the agency permit allows the pollution, impairment, or destruction of natural resources." Yet the majority's conclusion that a 10 civil action must be exclusive does not remedy this concern. The legislature expressly provided that a 10 civil action is available only when "the applicable statutory appeal period has elapsed." Minn. Stat. § 116B.10, subd. 1. In other words, the legislature contemplated that a 10 civil action would be available in addition to a certiorari appeal from an agency decision to issue a permit.

The district court's finding is supported by exhibit 2, the Lake-Ground Water Interaction Study at White Bear Lake, Minnesota, which was prepared by the DNR. Specifically, the report stated that "[c]omparisons of lake level graphs with ground water level graphs shows a strong correlation between the timing of highs and lows of lake levels and observation well levels. ... This is a strong indication the two are strongly hydraulically connected."

In addition to the administrative processes that are available to the concerned municipalities that have filed briefs as amici in this appeal, I note that none of these amici intervened even though our rules for permissive intervention are liberally construed. See Minn. R. Civ. P. 24.02 ; see also Minn. Stat. § 116B.03, subd. 3 (providing that interested parties "may be permitted to intervene on such terms as the court may deem just and equitable"). In fact, this court has upheld a district court's decision to vacate an order for default judgment against a direct defendant upon the motion by an intervenor who was not notified of the order until after it was entered. See, e.g. , Westfield Ins. Co. v. Wensmann, Inc ., 840 N.W.2d 438, 442 (Minn. App. 2013).